CA 05 360ML

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CHUBB CORPORATION, FEDERAL INSURANCE CO., CHUBB & SON, INC. and BULFINCH INDEMNITY COMPANY, LTD., as the successor to FFG INSURANCE CO., LTD.**<br><br>**Defendants.** | **Case No. 05-**<br>**Jury Trial Demanded** |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Robertson Stephens, Inc. ("RSI") and Bank of America Corporation, as the successor to FleetBoston Financial Corporation ("Fleet"), bring this action against the defendants, Chubb Corporation, Federal Insurance Co., its division Chubb & Son, Inc., and Bulfinch Indemnity Company, Ltd., formerly known as FFG Insurance Company, Ltd., for a declaration that the defendants were obligated to defend and are obligated to indemnify the Plaintiffs in connection with a claim asserted against Fleet and its subsidiary RSI by four former employees of RSI. Plaintiffs also seek money damages against the various defendants for breach of contract, breach of the duty of good faith and fair dealing, bad faith claims handling, negligence, and intentional interference with the Plaintiffs' contract for insurance.

**PARTIES**

1. Plaintiff Bank of America Corporation ("Bank of America") is a Delaware corporation with its principal place of business in North Carolina. Bank of America is the successor-in-interest to Fleet by virtue of a merger whereby Fleet was merged into Bank of

1

America. Because at all times pertinent to this action Fleet and its subsidiaries were the insured entity, all references to Fleet shall refer to and include Bank of America.

2. At all times relevant to this insurance action, Fleet, a bank holding company, was a Rhode Island corporation with its principal place of business in Rhode Island.

3. Plaintiff Robertson Stephens, Inc. is a Massachusetts corporation that operated as an investment bank and securities firm with a principal place of business in San Francisco, CA. At all relevant times, Fleet's wholly owned subsidiary Robertson Stephens Group, Inc. ("RSGI") was the holding company for RSI. For the purposes of this Complaint RSGI, the holding company, and RSI shall be referred to collectively as "RSI." Except when otherwise stated, Fleet and RSI are herein collectively referred to as "the Plaintiffs".

4. The Chubb Corporation is now and was at all relevant times a New Jersey corporation with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Chubb Corporation is now and at all times relevant to this action was licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

5. Defendant Federal Insurance Co. is now and was at all relevant times an Indiana corporation with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Federal Insurance Co. is a wholly owned subsidiary of The Chubb Corporation. Upon information and belief, Federal Insurance Co. is now and was at all relevant times licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

6. Defendant Chubb & Son, Inc. is now and was at all relevant times a New York corporation with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Chubb & Son, Inc. is a division of Federal Insurance Co. Upon information and belief, Chubb & Son, Inc. is now and at all relevant times was licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise

conduct the business of insurance. For the purposes of this Complaint, The Chubb Corporation, Federal Insurance and Chubb & Son are referred to collectively as "Chubb" or "the Chubb Defendants."

7. Upon information and belief, defendant Bulfinch Indemnity Co., Ltd. ("Bulfinch") is the successor-in-interest to FFG Insurance Co. Ltd. ("FFG"). Upon information and belief, Bulfinch is a Vermont company with a principal place of business in Burlington, Vermont. Upon information and belief, Bulfinch is now licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

## JURISDICTION

8. Federal jurisdiction over this matter is founded on diversity of citizenship and amount. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. Section 1332. Personal jurisdiction over defendants exists because each has transacted business in Rhode Island and has contracted to insure or act as a surety for or on behalf of persons, property, or risk located in the State of Rhode Island, or otherwise engaged in the business of insurance in Rhode Island.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

9. Fleet and FFG are parties to a primary insurance policy styled as a "Combined Risk Protection Program," bearing Policy Number FFG 00004 ("the Insurance Policy"), whereby, for good and valuable consideration, FFG agreed to insure Fleet and its subsidiaries, including RSI, against certain losses that might be incurred by the Fleet parent organization or by its subsidiaries. Copies of the Policy Declarations and General Conditions Section are attached hereto as Exhibits A and B respectively.

10. After negotiation between FFG and Fleet's Risk Management office in Rhode Island, FFG delivered the Insurance Policy to Fleet in Rhode Island.

11. Under the Insurance Policy, Fleet and RSI, as a subsidiary of Fleet, are entitled to various types of insurance coverage, including coverage under Section 6 thereof, which is

entitled "Employment Practices Liability" ("EPL"). A copy of the EPL Coverage Section is attached hereto as Exhibit C.

12. The Insurance Policy covers claims made against Fleet and RSI from October 1, 1999 to January 1, 2003. By agreement of Fleet and FFG and in accordance with the terms of the Insurance Policy, and for good and valuable consideration, the coverage was extended to cover the period up to and including January 1, 2004.

13. Chubb has admitted that an extended reporting period of January 1, 2003 to January 1, 2004 was granted.

14. The EPL provisions provide the Plaintiffs with coverage for, among other things, written demands for monetary or non-monetary relief brought by past, present or prospective employees of Fleet and its subsidiaries in connection with any actual or alleged wrongful termination of employment, or breach of any oral or written employment contract or quasi-employment contract. *See* Exhibit C, EPL ¶13, "Claim," (i)(b).

15. Fleet has paid all premiums for the Insurance Policy issued by FFG including a premium for the extension of the coverage period and has in all other respects complied with the terms of the Insurance Policy.

16. Under the EPL coverage of the Insurance Policy, in consideration of the premiums paid by Fleet, FFG agreed to pay on behalf of Fleet and its subsidiaries, up to the stated limit of liability in the Insurance Policy, "all Loss for which the Insured becomes legally obligated to pay on account of any Claim first made against the Insured during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, or allegedly committed or attempted by an Insured before or during the Policy Period." *See* Exhibit C, EPL ¶1.

17. In consideration of the premiums paid by Fleet, FFG further agreed pursuant to the EPL coverage that it had a duty to defend Fleet and its subsidiaries against any Claim

covered by the Insurance Policy, "even if any of the allegations are groundless, false or fraudulent." *See* Exhibit C, EPL ¶6.

18. Chubb and FFG are parties to a Claim Administration Agreement, effective as of October 1, 1999, pursuant to which Chubb, among other things, agreed and was contractually bound to receive, review and evaluate claims tendered by Fleet on its and its subsidiaries' behalf under the Insurance Policy and ultimately to deny, negotiate, adjust or settle any such claims made by Fleet under the Insurance Policy. A copy of the Claim Administration Agreement is attached hereto as Exhibit D.

19. Pursuant to the Claim Administration Agreement, Chubb was given "full authority to interpret policy language, make coverage decisions, and to settle covered Claims for any amount up to the Policy limits." *See* Exhibit D, Claim Administration Agreement § 2.C. "All decisions with respect to the ultimate disposition of a Claim under the Policy's limits shall be made by Chubb." *Id.* at § 2.E.

20. The sole purpose of the Claim Administration Agreement was to contract to Chubb all of the claim administration duties that FFG was legally obligated to provide to Fleet in connection with any claim made by Fleet and its subsidiaries under the Insurance Policy. Chubb and FFG intended to confer and did confer on the Plaintiffs the benefits of the claim administration services that FFG was obligated to provide under the Insurance Policy. The Plaintiffs are and were at all relevant times the intended third-party beneficiaries of the Claim Administration Agreement between Chubb and FFG.

21. Chubb owed to the Plaintiffs the duty of complying with all terms of the claim administration obligations of FFG under the Insurance Policy. Chubb further owed to the Plaintiffs a duty of good faith and fair dealing in performing its contractual duties for FFG, and Chubb was thus obligated to administer any claims by the Plaintiffs fairly and in good faith and to interpret such claims fairly and in good faith under the terms of the Insurance Policy.

22. In the Claim Administration Agreement, Chubb expressly represented and promised, for the benefit of the Plaintiffs, that Chubb "will comply with all applicable laws and regulations, including but not limited to those relating to claim settlement practices." *See* Exhibit D, § 3. Fleet and its subsidiaries were the sole intended beneficiaries of Chubb's promise and representation.

23. Chubb was aware at the time it made this promise and accepted this obligation that Fleet, as the parent company and principal named insured, was a resident of Rhode Island and that the Insurance Policy was delivered to Fleet in Rhode Island. Chubb agreed to comply with all applicable laws and regulations, including those related to claim settlement practices, in its dealings with Fleet under the Insurance Policy.

24. Not only was Chubb the claims handler for the primary Insurance Policy, but Chubb also was one of the reinsurers of coverage under that Policy, providing a quota share of 30% of the $100,000,000 reinsurance limit of liability. Chubb breached its duties under the Claim Administration Agreement because it was acting in its interests as a reinsurer, attempting to avoid coverage, rather than as a neutral, objective claims handler.

25. At all relevant times Chubb acted as the agent of FFG in handling and otherwise administering the claims brought by Fleet under the Insurance Policy.

**THE RSI EMPLOYMENT CLAIMS**

26. Chubb has admitted that the parent organization covered by the Insurance Policy includes Fleet and its subsidiaries and that both RSI and its holding company RSGI are such subsidiaries for which coverage may be available under the Insurance Policy.

27. On July 12, 2002, RSI announced that it would cease its broker-dealer operations and RSI began the process of closing out its positions and winding down its business operations. Most of RSI's employees were let go in July 2002, but some employees remained for a longer period to assist in the orderly wind-down of the operations.

28. As part of the wind-down process, RSI offered certain incentives to its employees in exchange for a release. Based upon the refusal of certain employees to execute such a release and based on oral conversations with those employees, RSI and Fleet had reason to believe that some or all of those employees were planning to institute legal proceedings against RSI and/or Fleet on account of the termination of their employment with RSI.

29. On or about December 16, 2002, in accordance with the General Conditions of the Insurance Policy, Fleet provided notice to FFG through Chubb of facts and circumstances giving rise to potential claims against RSI and Fleet that were anticipated to be asserted by certain former high ranking executives of RSI (the "Executive") as a result of their prior employment with RSI and the wind-down of RSI's operations.

30. On or about February 26, 2003, Fleet additionally provided to Chubb a written "Notice of Threatened Robertson Stephens Employment Actions," again putting Chubb and FFG on notice of the Executives' employment claims.

31. On or about March 31, 2003, Chubb on behalf of FFG responded to Fleet's written notice, denying coverage under the Insurance Policy on the basis that Fleet had not presented an actual "claim" as defined under the Insurance Policy because the Executives had not yet made a written demand for relief. Chubb asserted no other basis for declining coverage.

32. On or about June 4, 2003, the Executives served on Fleet such a written demand, enclosing a draft of a civil action complaint against Fleet and RSI seeking damages, indemnity, and statutory penalties arising from RSI's and Fleet's alleged breach of the Executives' oral, written and implied employment agreements. The Executives also served draft demands for arbitration of the same claims.

33. On or about June 20, 2003, still within the extended coverage period, Fleet tendered to FFG through Chubb a copy of the Executives' June 4, 2003 demand letter, draft civil complaint and draft arbitration claim and Fleet, for itself and RSI, sought defense and indemnification from FFG under the Insurance Policy.

34. Neither Chubb nor FFG responded to the June 20, 2003 tender of the Executives' employment claims until February 2004.

35. After first denying coverage on March 31, 2003, at no time from the June 20, 2003 tender of the written claims until February 2004 did Chubb or FFG formally acknowledge coverage, deny coverage, or assert a reservation of rights as to coverage.

36. At no time from June 20, 2003 until February 2004, did Chubb or FFG take any steps whatsoever to defend Fleet or RSI against the Executives' claims.

37. Fleet and RSI thereupon proceeded to defend themselves against the Executives' claims. Chubb knew or should have known that Fleet and RSI were taking steps, including hiring counsel, to defend themselves against and to resolve the Executives' claims. In September 2003, the Plaintiffs informed FFG through Chubb that they had commenced discussions and negotiations with counsel for the Executives with the intent to settle the dispute.

38. Chubb has admitted that it knew as early as September 2003 that the Plaintiffs had commenced settlement negotiations with the Executives. In fact, Plaintiffs' representatives met with Chubb in September 2003 and criticized its inaction, informing Chubb that Plaintiffs were engaging in settlement discussion with the Executives.

39. Chubb failed and refused to participate in said settlement negotiations, failed and refused to defend the Plaintiffs in these negotiations, and failed and refused to give its express consent to the Plaintiffs to do so.

40. Chubb's complete lack of response and utter failure to defend or even participate in handling the claim was a waiver of any objections Chubb might otherwise assert to the Plaintiffs' representation of their own interests.

41. In good faith, after thorough investigation and after lengthy and extended negotiation with counsel for the Executives, Fleet and RSI determined to settle the Executives' claims.

42. In or about December 2003, having still heard nothing from Chubb or FFG with respect to its request for defense and indemnification, the Plaintiffs gave Chubb formal notice of the likelihood of a settlement which was to be in excess of $5,000,000.

43. While the Plaintiffs were negotiating with the Executives in December 2003 and early January 2004, Chubb first informed Fleet *verbally* that the tendered claims were not covered at all under the extended reporting period, mistakenly relying on a scrivener's error in the language of the Insurance Policy.

44. On or about January 9, 2004, the Plaintiffs informed FFG through Chubb that Fleet and RSI had concluded a settlement of the Executives' employment claims in good faith, within the $100,000,000 aggregate limit of liability under the Insurance Policy.

45. On February 25, 2004, Chubb for the first time responded in writing to Fleet's June 20, 2003 tender of the Executives' claims for defense and indemnification. In its February 25, 2004 response Chubb finally acknowledged that the Executives' claims were covered: "After reviewing the provisions of the [EPL] coverage section of [the Insurance Policy] … Chubb has determined that the Policy affords coverage for this Claim. . . ." (Emphasis added). Chubb also correctly acknowledged that the Insurance Policy reporting period for claims had been extended to January 1, 2004, such that the June 20, 2003 tender of claims indisputably fell within the claims-made policy period. While acknowledging that the Policy affords coverage for this claim, Chubb also asserted that it would further investigate the claim and any defenses FFG might have to coverage.

46. Chubb's after-the-fact acknowledgement that the Executives' employment claims were covered under the Insurance Policy constitutes an admission that FFG breached its duty to defend Fleet and RSI under the Insurance Policy when the Executives' claims were first tendered to Chubb and that this breach was caused by Chubb.

47. Chubb's duty to defend Fleet and RSI is not debatable given Chubb's admission that there is coverage for the claim.

48. Under Rhode Island law, an insurer's refusal to defend renders it liable for the amount of the settlement made by its insureds, as well as for costs of defense and attorneys' fees.

49. Despite its acknowledgment that the Executives' claims were covered by the Insurance Policy and despite the Plaintiffs' demand for payment, Chubb and FFG have at all times failed and refused to reimburse the Plaintiffs for any of the defense costs incurred in defending, investigating and ultimately settling the Executives' claims and have failed to reimburse the Plaintiffs for any of the settlement payment required under the terms of the Insurance Policy.

50. The Plaintiffs have incurred substantial defense costs and expended money in settling the Executives' claims.

51. FFG, through its own actions and as a result of Chubb's actions as its agent, has breached both its duty to defend and its duty to indemnify the Plaintiffs as it contracted to do in the Insurance Policy.

52. Chubb breached its duty to comply with all applicable laws and regulations, including those related to claim settlement practices.

53. Because of FFG's actions and because of Chubb's actions, the Plaintiffs are entitled to full reimbursement of their out of pocket expenditures, including their attorneys' fees in bringing this action.

**COUNT I**

**(Declaratory Judgment -- Bulfinch)**

54. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-53 as if fully stated herein.

55. All conditions precedent to recovery under the Insurance Policy have been satisfied or waived.

56. Bulfinch, as successor-in-interest to FFG, owed an obligation to defend Plaintiffs against the Executives' claims.

57. Bulfinch, as successor-in-interest to FFG, owes an obligation to Plaintiffs to reimburse them in full for the settlement paid to the Executives.

58. Bulfinch, as successor-in-interest to FFG, has failed to defend and has refused to indemnify Plaintiffs for any of the Executives' claims, causing substantial monetary damages to Plaintiffs, thereby creating an actual controversy.

59. Plaintiffs seek a declaration that Bulfinch, as successor-in-interest to FFG, is obligated under the Insurance Policy (1) to reimburse them for all costs incurred to date in defending the Executives' claims; and (2) to pay and indemnify Plaintiffs in full, to the limit of the Insurance Policy, for all sums they have paid in settlement of the Executives' claims.

**COUNT II**

**(Breach of Contract -- Bulfinch)**

60. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-59 as if fully stated herein.

61. The Insurance Policy sold to Fleet is a contract, and because all conditions precedent to recovery under the Insurance Policy have been satisfied or waived, Fleet and RSI, as Fleet's subsidiary, are entitled to all the benefits of that contract.

62. Plaintiffs have incurred substantial costs and expenses in defending the Executives' claims and have expended money in settling the claims.

63. Bulfinch, as successor-in-interest to FFG, has breached its contractual obligations to the Plaintiffs under the Insurance Policy by failing to defend Plaintiffs for the costs and settlement payment described herein, as is required under the terms of the Insurance Policy.

64. Plaintiffs have been damaged by Bulfinch's breach of its contractual obligations as aforesaid in the amount of costs, including but not limited to defense costs and indemnity

costs, which they have incurred in connection with the Executives' claims, which costs should be paid by Bulfinch, as successor-in-interest to FFG, under the Insurance Policy sold to Fleet. Plaintiffs also seek their reasonable attorneys' fees in bringing this action and pre-judgment and post-judgment interest.

**COUNT III**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing -- Bulfinch)**

65. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-64 as if fully stated herein.

66. Inherent in every contract is an implied covenant between the parties to act in good faith and deal fairly with the other and Bulfinch, as successor-in-interest to FFG, owed such a duty to the Plaintiffs under the Insurance Policy.

67. By virtue of its conduct as described herein, Bulfinch, as successor-in-interest to FFG, breached its duties to the Plaintiffs.

68. As a result of Bulfinch's breach of the implied covenant of good faith and fair dealing, Plaintiffs have sustained substantial damages, including their defense costs, a settlement payment, and the costs of this litigation.

**COUNT IV**

**(Bad Faith Claims Handling -- Bulfinch and Chubb -- R.I. Gen. Laws § 9-1-33 (1956))**

69. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-68 as if fully stated herein.

70. Bulfinch, as successor-in-interest to FFG, by virtue of the Insurance Policy, owed the Plaintiffs a duty of good faith to review, analyze and act on any and all claims tendered to them by the Plaintiffs under the Insurance Policy

71. Chubb, by virtue of its undertakings in the Claim Administration Agreement, owed the Plaintiffs a duty of good faith to review, analyze and act on any and all claims tendered to it by the Plaintiffs under the Insurance Policy.

72. Bulfinch, as successor-in-interest to FFG, by its own actions and because of Chubb's actions has breached its duties and obligations under the Insurance Policy as alleged herein, by ignoring Plaintiffs' tender of claims, by failing to defend the Plaintiffs against the claims, and by refusing to indemnify the Plaintiffs.

73. The Executives' claims were plainly covered by the Insurance Policy and were not "fairly debatable" as evidenced by Chubb's after-the-fact admission that the claims were in fact covered under the Insurance Policy.

74. Chubb's after-the-fact admission of coverage in February 2004 was based on the same information the Plaintiffs provided to it when the Executives' claims were first tendered in December 2002.

75. Bulfinch's and Chubb's delay in responding to the tender of the claims is further evidence of their bad faith and of their intentional failure to determine whether or not there was any good faith basis to deny the claims or deny the duty to defend Fleet and RSI.

76. Chubb's bad faith is further demonstrated by its pattern of conduct in trying to find excuses for not defending the claim, ranging first from Chubb's blatantly false assertion that Fleet had not purchased extended coverage to Chubb's assertion that its wrongful refusal to so much as acknowledge the claim or its duty to defend constitutes a defense of lack of consent.

77. Bulfinch, as successor-in-interest to FFG, and Chubb acted intentionally, recklessly, unreasonably and with willful disregard for their duties to the Plaintiffs promptly to investigate and respond to the Plaintiffs' tender of the claims for defense and indemnification.

78. As a result of Bulfinch's and Chubb's conduct, the Plaintiffs are entitled to recover compensatory and punitive damages, as well as their attorneys' fees in bringing this action.

**COUNT V**

**(Tortious Interference with Contractual Relations -- Chubb)**

79. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-78 as if fully stated herein.

80. Fleet, along with its subsidiaries including RSI, and FFG were parties to a contract, namely, the Insurance Policy.

81. Chubb was aware of that contract between Fleet, and its subsidiaries, and FFG and, in fact, contractually bound itself to administer claims made by Fleet under the Insurance Policy.

82. Chubb intentionally and wrongfully, without any privilege or justification, interfered with the contract between Fleet, including its subsidiaries, and FFG by its actions as described in this Complaint.

83. Not only was Chubb the claims handler for the primary Insurance Policy, but Chubb also was one of the reinsurers of coverage under that Policy, providing a quota share of 30% of the $100,000,000 reinsurance limit of liability. Chubb breached its duties under the Claim Administration Agreement because it was acting in its interests as a reinsurer, attempting to avoid coverage, rather than as a neutral, objective claims handler.

84. Chubb put its own interests ahead of those of Fleet, RSI and FFG and, with deliberate and reckless disregard for their rights, Chubb denied both Fleet, RSI and FFG the benefits of their bargain under the Insurance Policy.

85. Chubb was obligated to inform FFG of claims made by Fleet and its subsidiaries under the Policy. Chubb failed to inform FFG of Fleet and RSI's claim on June 20, 2003, and

failed to inform FFG that Chubb was refusing to defend Fleet and RSI in violation of the terms of the Insurance Policy.

86. Chubb failed and refused to inform FFG that its refusal to defend forced Fleet and RSI to defend themselves and that Fleet and RSI were engaged in settlement discussions with the Executives.

87. Chubb's failure and refusal to inform FFG of the status of the claim and of Chubb's breaches of duty to the Plaintiffs were a violation of the Claim Administration Agreement, deprived FFG of the opportunity on its own to offer to defend the Plaintiffs or participate in the settlement process, and thus constituted yet another separate breach of the duties owed to Fleet and RSI as parties to the Insurance Policy and as the intended beneficiaries of the Claim Administration Agreement.

88. As a direct and proximate result of Chubb's intentional and wrongful interference with the contract between Fleet and FFG, Plaintiffs have sustained substantial damages.

**COUNT VI**

**(Negligence -- Chubb)**

89. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1-88 as if fully stated herein.

90. Fleet, and its subsidiaries including RSI, were intended third-party beneficiaries of the Claim Administration Agreement between FFG and Chubb.

91. Chubb owed a duty to the Plaintiffs as the intended beneficiaries of that agreement to administer the Insurance Policy as required by the Claims Administration Agreement.

92. Chubb also owed a duty to Fleet, as the parent company and principal named insured, to comply with all applicable laws and regulations, including those related to claim settlement practices.

93. Chubb was required to perform its duties and obligations to both the Plaintiffs and to FFG under the Claim Administration Agreement fairly and in good faith.

94. Chubb was required to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner, and in good faith.

95. Chubb was required, and owed a duty to the Plaintiffs, to put their interest ahead of its own.

96. Chubb had an obligation and duty to promptly and fully respond to the Plaintiffs, to investigate their claim in a timely fashion, and to subject their claim to appropriate review.

97. Chubb's inaction and failure and refusal to act after receipt of Plaintiffs' many notices of claim was a breach of all its duties enumerated above.

98. Chubb breached these duties by its failure to fulfill its responsibilities to, among other things, promptly and fully respond to the Plaintiffs' tender of the Executives' claims and to investigate and resolve the claims properly.

99. Chubb's intentional failure to determine whether there was a lawful basis to deny the claim, standing alone, is bad faith.

100. The issue of coverage is not debatable, either as to the facts or the law. Chubb has admitted that the claim submitted by the Plaintiffs is covered under the Insurance Policy.

101. Chubb has refused to make any payment to Plaintiffs, even while admitting coverage, without a reasonable basis in fact or law, and, indeed, without any explanation for that refusal.

102. Chubb's intentional and deliberate withholding of payments it knows are in fact owed to the Plaintiffs under the Insurance Policy constitutes bad faith as a matter of law.

103. As a direct and proximate result of Chubb's breach of its duties as discussed herein, Plaintiffs have sustained substantial damages.

WHEREFORE, Plaintiffs Robertson Stephens, Inc. and Bank of America Corporation request that the Court enter judgment against Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., and the Chubb Defendants (collectively, "Defendants") in their favor as follows:

1. Declaring that Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., was and is obligated to defend FleetBoston Financial Corporation and Robertson Stephens, Inc. against the RSI Executives' claims; that Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., breached this obligation; that Defendants are obligated to indemnify Fleet and RSI for the full amount of the settlement payment, plus interest, and defense fees and costs in an amount to be proven at trial.

2. Ordering Defendants to specifically perform all duties under the Insurance Policy.

3. Awarding Plaintiffs damages against all Defendants, jointly and severally, in an amount to be determined at trial, or otherwise, including, but not limited to, direct damages, consequential damages, and incidental damages, together with pre-judgment and post-judgment interest, costs and payments and all other sums incurred to date by the Plaintiffs, including but not limited to settlement payments, counsel fees and expert fees, jointly and severally against all Defendants.

4. For all costs, including reasonable attorneys' fees, and all other reasonable litigation expenses for the litigation of this action.

5. For punitive damages in an amount to be determined at trial.

6. For such other and further relief as the Court may deem just and proper.

**Jury Demand**

Plaintiffs demand trial by jury of all issues so triable.

Respectfully submitted,

**ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**

By its attorneys,

**PARTRIDGE SNOW & HAHN LLP**

Steven E. Snow, R.I. Bar No. 1774
Howard Merten, R.I. Bar No. 3171
180 South Main Street
Providence, RI 02903
(401) 861-8200 FAX (401) 861-8210

Of Counsel:

S. Elaine McChesney, BBO #329090
Anthony M. Fuller, BBO #633246
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000
Dated: August 23, 2005

814752_1/99998-75