# SECTION 1

## General Conditions

**Policy Number: FFG 00004**

**SECTION 1**

**GENERAL CONDITIONS**

**ALL POLICY SECTIONS**

1. **TERMS AND CONDITIONS**

Except for this policy Section 1 - GENERAL CONDITIONS - ALL POLICY SECTIONS, or unless stated to the contrary in any coverage section, the terms and conditions of each coverage section of this policy apply only to that section and shall not be construed to apply to any other coverage section of this policy.

2. **DEFINITIONS**

When used in this policy:

**Fiduciary Assets** shall mean:

1) Assets managed on behalf of customers whether through investment services, trust, private banking or brokerage; and

2) Mutual Fund assets managed by the **Parent Organization** or its subsidiaries.

**Parent Organization** shall mean FleetBoston Financial Corporation

**Policy Period** shall mean the period of time specified in Item 3 of the Policy Declarations.

**Reinsurers** shall mean those insurance companies which reinsure the coverages provided to the **Parent Organization** by this Policy FFG 00004.

3. **TERMINATION OF COVERAGE**

A. This policy and its coverage sections can not be terminated by either **Insurer** or **Parent Organization** without the express permission of the other party except:

   1) the **Insurer** is permitted to terminate the policy for non-payment of premium only after a minimum of ten (10) days advance written notice to the **Parent Organization** at the mailing address as shown in Item 2 of the Policy Declarations; or

   2) as may be permitted or allowed in subsequent coverage sections of this policy.

B. The **Insurer** is permitted to effect termination of coverage as provided in above subparagraph (A) only upon the express written permission of the **Reinsurers** of Policy FFG 00004.

C. This policy terminates coverage at the expiration of the **Policy Period**.

D. This policy terminates coverage upon the exhaustion of the aggregate **Limit of Liability** as shown in Item 6 of the Policy Declarations.

4. **NON-RENEWAL OF COVERAGE**

The **Insurer** has a duty to provide written notification to the **Parent Organization** a minimum of 90 days prior to the expiration of the **Policy Period** of its intent to non-renew the policy.

5. **NOTICE OF CLAIM OR LOSS**

Notice of **Claim** or **Loss** as covered by this policy shall be given in writing addressed to either the **Insurer** or Claims Manager at:

| Insurer: | Claims Manager: |
|---|---|
| FFG Insurance Co., Ltd. | Chubb Group of Insurance Companies |
| c/o Aon Insurance Managers (Bermuda) Ltd. | 12 Vreeland Road |
| Craig Appin House, 8 Wesley Street | P.O. Box 981 |
| P.O. Box 2450 Hamilton HM JX | Florham, NJ 07932-0981 |
| Bermuda | |

Such notice shall be effective on the date of receipt by the **Insurer** at the above address.

6. **INVESTIGATION AND SETTLEMENT**

The **Insurer** may make any investigation it deems necessary and may, with the written consent of the **Parent Organization**, make any settlement of a claim it deems expedient.

7. **SUBROGATION**

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Parent Organization**, and the **Parent Organization** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Parent Organization**.

The **Parent Organization** is permitted to waive any of its rights of subrogation prior to discovery of loss as respects coverage provided in Section 3 - Financial Institution Bond & Electronic Computer Crime. The **Parent Organization** must do nothing after discovery of loss to impair or alter such rights.

8. **ACTION AGAINST THE INSURER**

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Parent Organization** to determine the liability of the **Parent Organization** nor shall the **Insurer** be impleaded by the **Parent Organization** or its legal representatives.

9. **AUTHORIZATION CLAUSE**

By acceptance of this policy, the **Parent Organization** agrees to act on behalf of all **Insured(s)** with respect to:

a) the giving and receiving of notice of claim or termination,

b) the payment of premiums and the receiving of any return premiums that may become due under this policy,

c) the negotiation, agreement to and acceptance of endorsements,

d) the giving receiving of any notice provided for in this policy,

e) the giving of notice to apply for the **Extended Reporting Period**, as defined in policy sections 2, 4, 5 and 6,

and the **Insured(s)** agrees that the **Parent Organization** shall act on their behalf.

**10. ALTERATION AND ASSIGNMENT**

No change, modification of, or assignment of interest under any section of this policy shall be in effect except when made by a written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

**11. BANKRUPTCY OR INSOLVENCY**

Bankruptcy or insolvency of any **Insured(s)** or of the estate of any **Insured(s)** shall not relieve the **Insurer** of its obligations nor deprive the **Insured(s)** of its rights under this policy.

**12. NEWLY CREATED OR ACQUIRED SUBSIDIARIES**

In the event that an entity or **Benefit Program** is created or acquired after the **Inception Date** of this policy, of which more than 50% of the voting stock is owned by the **Parent Organization** either directly or through one or more of its **Subsidiaries**, and

1) the assets of such newly created or acquired entity exceed 10% of total assets of the **Parent Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statements; or

2) the **Fiduciary Assets** of such newly created or acquired entity exceed 10% of **Fiduciary Assets** under management of the **Parent Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement; or

3) the business activities of such newly created or acquired entity are different than any of the business activities engaged in by the **Parent Organization** or any of its subsidiaries as of the date such entity is created or acquired, or

4) the **Benefit Program** plan assets of such created or acquired entity exceed $5,000,000,000 as reflected in the **Benefit Programs** most recent 5500,

coverage shall apply to such newly created or acquired entity on the condition that:

1) written notice of the creation or acquisition, together with such information the **Insurer** may request, is received by the **Insurer** at the address shown in Item 9 of the Declarations within 120 days of the creation or acquisition; and

2) coverage revisions have been effected as required by the **Insurer**, and

3) the **Parent Organization** shall pay any reasonable additional premium required by the **Insurer**.

Coverage as described in this section shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation.

Notwithstanding the foregoing, no coverage shall be afforded pursuant to this Section 12. with respect to any employee stock ownership plan or any Insured Persons or Sponsor Organization thereof unless the Company, by specific endorsement hereto, agrees to afford such coverage. Any such coverage shall be at the terms and conditions and for the premium set forth in such endorsement.

13. ACQUISITION OF PARENT ORGANIZATION BY ANOTHER ORGANIZATION

If (i) the **Parent Organization** merges into or consolidates with another organization such that the **Parent Organization** is not the surviving entity or (ii) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**, or (iii) the **Parent Organization** completely ceases to actively engage in its primary business ("cessation"), or (iv) upon the **Financial Impairment** of the **Parent Organization**, coverage under this Policy shall continue for the time period indicated in the schedule below, based on the remaining **Policy Period**, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, by **Insured(s)** prior to such merger, consolidation acquisition, cessation or **Financial Impairment**. The **Parent Organization** shall give written notice of such merger, consolidation, acquisition, cessation or **Financial Impairment** to the **Insurer** as soon as practicable together with such information as the **Insurer** may require. The full policy premium for the **Policy Period** shall be deemed fully earned immediately upon the occurrence of any event outlined in (i) through (iv) above.

| Remaining Policy Period | Run-off Period* |
|---|---|
| 24 months or greater | 6 years |
| 12 months or greater | 3 years |

* from the date of any event outlined in (I) through (iv) above

If the responsibility of the **Parent Organization** for the **Administration** of, or as a fiduciary of, any **Benefit Program** is fully assumed by any other person and/or entity, coverage under this Policy for such **Benefit Program** shall continue until termination of this policy, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, by **Insured(s)** prior to such assumption. The **Parent Organization** shall give written notice of such assumption to the **Insurer** as soon as practicable together with such information as the **Insurer** may require. The full policy premium for the **Policy Period** for such **Benefit Program** shall be deemed fully earned immediately upon the occurrence of

the assumption.

14. **PREMIUM**

A. This policy has been issued based on total pre-paid **Premium** due the **Insurer** of $7,587,604 for the policy period.

1) All **Premium** payments required by terms and conditions of either Section 1- General Conditions or the coverage sections of this policy are to be made in accordance with the instructions of the **Insurer**.

B. Any acquisition by the **Parent Organization**, its subsidiary companies or subsidiary companies thereof which increases the total assets of the **Parent Organization** greater than 10% or **Fiduciary Assets** greater than 10% of total **Fiduciary Assets** will be subject to the following rates for the excess amount of assets:

1) rate of $00.03 per one thousand dollars of assets of the **Parent Organization**.

2) rate of $0.015 per one thousand dollars of **Fiduciary Assets** under control by the **Parent Organization**.

Such premium shall be prorated from the acquisition date to the next anniversary date.

C. If the **Parent Organization** effects termination as a result of the sale or merger of Fleet Boston Corporation, as provided in Section 3 - Termination of Coverage, the **Parent Organization** shall be entitled to a return premium for only Section 3 - Financial Institution Bond & Electronic and Computer Crime Coverage of this policy which will be equal to 30 percent of the unearned premium for the **Policy Period**.

D. **Extended Reporting Period**

If the **Insurer** refuses to renew this policy or any of its coverage sections, the **Parent Organization** shall have the right to an **Extended Reporting Period** as granted in each coverage section. Premium for such **Extended Reporting Period** shall be in accordance with the following schedule:

1) <u>Non-Renewal of Policy</u>: 62.5% of fully adjusted annualized **Policy Period** premium as provided in this section titled "Premium".

2) Term of Extended Reporting Period:

| | | |
|---|---|---|
| (a) | <u>Policy Section 2</u>:<br>Company Reimbursement Coverage | 1 Year |
| (b) | <u>Policy Section 3</u>:<br>Financial Institution Bond &<br>Electronic and Computer Crime | 90 Days Discovery |
| (c) | <u>Policy Section 4</u>: | 1 Year |

Bankers Professional Liability

| | | |
|---|---|---|
| (d) | Policy Section 5:<br>Fiduciary Liability | 1 Year |
| (e) | Policy Section 6:<br>Employment Practices Liability | 1 Year |

**15. VALUATION AND FOREIGN CURRENCY**

All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if judgment is rendered, settlement is denominated or another element of loss under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is rendered, the amount of the settlement is agreed upon or the other element of loss is due, respectively.

**16. POLICY TERRITORY**

This policy provides coverage anywhere in the world.

**17. OTHER INSURANCE**

The insurance provided by this policy is to be excess of any other valid and collectible insurance available to the **Parent Organization**, and its subsidiary companies (as defined in each coverage section).

**18. ARBITRATION**

Any dispute under this policy shall be submitted to arbitration which, except as provided herein, shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The dispute shall be submitted before two arbiters, who shall be experienced in the property and casualty insurance business. One arbiter shall be chosen by each party. In the event that arbiters fail to agree, the dispute shall be submitted to an umpire experienced in the property and casualty insurance business, who shall be appointed by the original two arbiters. The decision of the arbiters or umpire is final and binding on both parties. Each party shall bear the expenses of its own arbiter and shall share equally all other expenses, including the expenses of an umpire. The arbitration shall take place in the Commonwealth of Bermuda. The parties may, by mutual written consent, agree to another form of dispute resolution.