**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CHUBB CORPORATION, FEDERAL INSURANCE CO., CHUBB & SON, INC. and BULFINCH INDEMNITY COMPANY, LTD., as the successor to FFG INSURANCE CO., LTD.,**<br><br>**Defendants.** | **Case No. 05-0360-S-LDA** |

## ANSWER AND COUNTERCLAIM

Defendant Federal Insurance Company ("Federal"), by the undersigned counsel, responds to the Complaint of plaintiffs Robertson Stephens, Inc. ("RSI") and Bank of America Corporation ("Bank of America"), as the successor to FleetBoston Financial Corporation ("Fleet"), and Federal asserts a Counterclaim as follows.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

With respect to the allegations in the separately numbered paragraphs of the Complaint, Federal responds as follows:

1. Federal admits the allegations of the first two sentences of paragraph 1 of the Complaint. The third sentence of paragraph 1 the Complaint contains no allegations, but is merely a description of the manner in which Plaintiffs intend to refer to Fleet and Bank of America throughout the Complaint; therefore, no response is required.

2. Federal admits the allegations in paragraph 2 of the Complaint.

3. With respect to the allegations in the first two sentences of paragraph 3 of the

Complaint, Federal states that it has been advised by Plaintiffs that Robertson Stephens, Inc. ("RSI") is a Massachusetts corporation that operated as an investment bank and securities firm with a principal place of business in San Francisco, CA, and that Fleet's wholly owned subsidiary Robertson Stephens Group, Inc. ("RSGI") was the holding company for RSI. However, Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 3 of the Complaint, or to verify that the Plaintiffs have in fact advised correctly as to the status of RSI or RSGI. The final two sentences of paragraph 3 the Complaint contain no allegations, but merely describe the manner in which Plaintiffs intend to refer to RGSI, RSI and Fleet; therefore, no response is required.

4. With respect to the allegations in paragraph 4 of the Complaint, Federal admits that The Chubb Corporation is a corporation organized and incorporated under the laws of the state of New Jersey with its principal place of business in New Jersey. The remaining allegations in paragraph 4 are denied.

5. With respect to the allegations in the first sentence of paragraph 5 of the Complaint, Federal admits that it is a corporation organized and incorporated under the laws of the State of Indiana and that it maintains its principal place of business in New Jersey. Federal admits the allegations in the second sentence of paragraph 5 of the Complaint. With respect to the allegations in the third sentence of paragraph 5 of the Complaint, Federal admits that it is licensed to and does engage in the business of selling insurance policies in the state of Rhode Island, among other states. The remaining allegations in paragraph 5 are denied.

6. With respect to the allegations in the first sentence of paragraph 6 of the Complaint, Federal admits that Chubb & Son Inc. is a corporation organized and incorporated under the laws of the State of New York with its principal place of business in New Jersey. Federal denies the allegations in the second and third sentences of paragraph 6 of the Complaint. The fourth sentence of paragraph 6 the Complaint contains no allegations, but is merely a description of the manner in which Plaintiffs intend to refer to The Chubb Corporation, Federal and Chubb & Son Inc. throughout the Complaint; therefore, no response is required.

7. With respect to the allegations in the first sentence of paragraph 7 of the Complaint, Federal states that it has been advised by Plaintiffs that Bulfinch is the successor-in-interest to FFG. However, Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 7 of the Complaint, or to verify that the Plaintiffs have in fact advised correctly as to the status of Bulfinch. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of paragraph 7 of the Complaint.

8. The first two sentences of paragraph 8 of the Complaint assert legal conclusions regarding subject matter jurisdiction that do not require a response. To the extent that a response is nonetheless deemed required, Federal admits that this Court has subject matter jurisdiction to the extent that Plaintiffs allegations concerning the citizenship of Bulfinch are accurate. The third sentence of paragraph 8 of the Complaint asserts legal conclusions regarding personal jurisdiction over all of the defendants that do not require a response. To the extent that a response is nonetheless deemed required, Federal denies those allegations.

9. With respect to the allegations in the first sentence of paragraph 9 of the Complaint, Federal admits that FFG issued Policy Number FFG 00004 to Fleet (the "Policy"). Federal further states that the Policy speaks for itself, and therefore denies the remaining allegations in the first sentence of paragraph 9 as stated. With respect to the allegations in the second sentence of paragraph 9 of the Complaint, Federal admits that the documents attached as Exhibits A and B of the Complaint appear to be accurate copies of certain portions of the Policy. The remaining allegations in paragraph 9 are denied.

10. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11. With respect to the allegations in the first sentence of paragraph 11 of the Complaint, Federal states that the Policy speaks for itself, and therefore denies the allegations as stated. Federal admits the allegations in the second sentence of paragraph 11.

12. With respect to the allegations in paragraph 12 of the Complaint, Federal states

that the Policy speaks for itself, and therefore denies those allegations as stated.

13. With respect to the allegations in paragraph 13 of the Complaint, Federal admits that the Policy had an Extended Reporting Period of January 1, 2003 to January 1, 2004. Federal further states that the Policy, and in particular the terms of the Extended Reporting Period, speaks for itself, and therefore denies the allegations in paragraph 13 as stated.

14. With respect to the allegations in paragraph 14 of the Complaint, Federal states that the Policy speaks for itself, and therefore denies those allegations as stated. Federal further states that paragraph 14 of the Complaint contains an incomplete, and therefore inaccurate, quotation of a portion of the Policy.

15. With respect to paragraph 15 of the Complaint, Federal states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that Fleet paid the premium to FFG. Federal denies the remaining allegations in paragraph 15.

16. With respect to the allegations in paragraph 16 of the Complaint, Federal states that the Policy speaks for itself, and therefore denies the allegations as stated. Federal further states that paragraph 16 of the Complaint contains an incomplete, and therefore inaccurate, quotation of a portion of the Policy.

17. With respect to the allegations in paragraph 17 of the Complaint, Federal states that the Policy speaks for itself, and therefore denies the allegations as stated. Federal further states that paragraph 17 of the Complaint contains an incomplete, and therefore inaccurate, quotation of a portion of the Policy.

18. With respect to the allegations in the first sentence of paragraph 18 of the Complaint, Federal states that its unincorporated division Chubb & Son entered into a Claim Administration Agreement with FFG, which Claim Administration Agreement speaks for itself. Federal denies the remaining allegations in the first sentence of paragraph 18. Federal admits the allegations in the second sentence of paragraph 18 of the Complaint.

19. With respect to the allegations in paragraph 19 of the Complaint, Federal states that the Claim Administration Agreement speaks for itself, and denies the remaining allegations

in that paragraph.

20. Federal denies the allegations in paragraph 20 of the Complaint.

21. Federal denies the allegations in paragraph 21 of the Complaint.

22. With respect to the allegations in paragraph 22 of the Complaint, Federal states that the Claim Administration Agreement speaks for itself, and denies the remaining allegations in that paragraph.

23. Federal denies the allegations in the first sentence of paragraph 23 as stated. With respect to the allegations in the second sentence of paragraph 23 of the Complaint, Federal states that the Claim Administration Agreement speaks for itself, and denies the remaining allegations in that paragraph.

24. With respect to the allegations in the first sentence of paragraph 24 of the Complaint, Federal admits that it entered into a Certificate of Facultative Casualty Reinsurance with FFG, which agreement speaks for itself. Federal denies the remaining allegations in that paragraph.

25. Federal admits the allegations in paragraph 25 of the Complaint.

26. With respect to the allegations in paragraph 26 of the Complaint, Federal states that it has issued correspondence setting forth its coverage views concerning this matter, which correspondence speaks for itself. Federal denies the remaining allegations in that paragraph.

27. With respect to the allegations in the first sentence of paragraph 27 of the Complaint, Federal admits that RSI made an announcement on July 12, 2002 concerning the fact that it would be winding down its business operations. Federal is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that paragraph.

28. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29. With regard to the allegations in paragraph 29 of the Complaint, Federal admits that Fleet claims to have sent a letter dated December 16, 2002, to FFG and Federal, which letter

speaks for itself. Federal denies that the 43 individuals referred to in that letter are the "Executives" referred to in the Complaint. On the contrary, every other reference to the "Executives" in the Complaint clearly refers only to Todd Carter, John Conlin, Kenneth R. Fitzsimmons, and G. Mitchell Whiteford, four former members of RSI's Executive Committee (who were not mentioned in the December 16, 2002, letter), and not to the 43 individuals mentioned in the December 16, 2002, letter. Accordingly, for puposes of this Answer, it is assumed that the term "Executives" refers to those four individuals alone. To the extent the term "Executives" in any allegation in the Complaint refers to any other individuals, all such allegations are denied. All other allegations in paragraph 29 are denied.

30. With respect to the allegations in paragraph 30 of the Complaint, Federal admits that, on or about February 26, 2003, it received a document from Fleet entitled "Notice of Threatened Robertson Stephens Employment Actions." Federal denies the remaining allegations in that paragraph.

31. With respect to the allegations in paragraph 31 of the Complaint, Federal states that it issued a coverage letter dated March 31, 2003, which coverage letter speaks for itself. Federal denies the remaining allegations in that paragraph.

32. With respect to the allegations in paragraph 32 of the Complaint, Federal states that, upon information and belief, the Executives sent a draft Complaint and draft Statement of Claim to Fleet, all of which speak for themselves. Federal denies the remaining allegations in that paragraph.

33. With respect to the allegations in paragraph 33 of the Complaint, Federal admits that Fleet forwarded the draft Complaint and draft Statement of Claim to Federal by letter dated June 20, 2003. Federal denies the remaining allegations in that paragraph.

34. Federal denies the allegations in paragraph 34 of the Complaint.

35. Federal denies the allegations in paragraph 35 of the Complaint.

36. Federal denies the allegations in paragraph 36 of the Complaint as stated. Federal further states that FFG had no duty to defend the claims asserted by the Executives, as the

$10,000,000 Retention was not exceeded until Fleet had already entered into a settlement with the Executives. Federal further states that there is no coverage for that settlement for the reasons set forth in Federal's Counterclaim.

37. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 37 of the Complaint. Federal denies the allegations in the second sentence of paragraph 37. With respect to the allegations in the third sentence of paragraph 37 of the Complaint, Federal admits that in September 2003 it was informed that Fleet had commenced settlement negotiations with the Executives. Federal further states that it received no substantive details concerning the nature of the settlement talks, nor did it receive any notification of any reasonable possibility that a settlement might exceed $5,000,000 until December 29, 2003. Federal denies the remaining allegations in paragraph 37.

38. With respect to the allegations in the first sentence of paragraph 38 of the Complaint, Federal admits that in September 2003 it was informed that Fleet had commenced settlement negotiations with the Executives. Federal further states that it received no substantive details concerning the nature of the settlement talks, nor did it receive any notification of any reasonable possibility that a settlement might exceed $5,000,000 until December 29, 2003. Federal denies the remaining allegations in paragraph 38.

39. With respect to the allegations in paragraph 39 of the Complaint, Federal admits that it did not participate in the settlement negotiations, but denies the remaining allegations in paragraph 39.

40. Federal denies the allegations in paragraph 40 of the Complaint.

41. Federal denies the allegations in paragraph 41 of the Complaint.

42. With respect to the allegations in paragraph 42 of the Complaint, Federal admits that, on December 29, 2003, Fleet advised Federal for the first time that it had agreed to a settlement in an amount exceeding $10,000,000 [for confidentiality purposes, the specific amount will not be stated herein]. This was Federal's first notice that Fleet believed its exposure was likely to exceed $10,000,000 or even $5,000,000. Federal denies the remaining allegations

in paragraph 42.

43. Federal denies the allegations in paragraph 43 of the Complaint.

44. With respect to the allegations in paragraph 44 of the Complaint, Federal admits that on January 9, 2004, Fleet informed Federal that it had agreed to settle the claims brought by the Executives for the amount previously described to Federal on December 29, 2003 (the "RSI Settlement"). All other allegations in paragraph 44 of the Complaint are denied as stated.

45. With respect to the allegations in paragraph 45 of the Complaint, Federal states that it issued the February 25, 2004 letter, which speaks for itself. Federal denies the remaining allegations, and specifically denies that the letter "acknowledged that the Executives' claims were covered."

46. Federal denies the allegations in paragraph 46 of the Complaint.

47. Federal denies the allegations in paragraph 47 of the Complaint.

48. Federal denies the allegations in paragraph 48 of the Complaint.

49. Federal denies the allegations in paragraph 49 of the Complaint.

50. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint.

51. Federal denies the allegations in paragraph 51 of the Complaint.

52. Federal denies the allegations in paragraph 52 of the Complaint.

53. Federal denies the allegations in paragraph 53 of the Complaint.

**COUNT I**

**(Declaratory Judgment – Bulfinch)**

54. Federal repeats and realleges the responses to the allegations in paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55. Federal denies the allegations in paragraph 55 of the Complaint.

56. Federal denies the allegations in paragraph 56 of the Complaint.

57. Federal denies the allegations in paragraph 57 of the Complaint.

58. With regard to the allegations in paragraph 58 of the Complaint, Federal admits

that there is an actual controversy between the parties concerning insurance coverage for the RSI Settlement, but denies that Plaintiffs are entitled to such coverage.

59. With regard to the allegations in paragraph 59 of the Complaint, Federal admits that Plaintiffs seek a declaration of coverage, but deny that they are entitled to such a declaration.

**COUNT II**

**(Breach of Contract – Bulfinch)**

60. Federal repeats and realleges the responses to the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Federal denies the allegations in paragraph 61 of the Complaint.

62. Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint.

63. Federal denies the allegations in paragraph 63 of the Complaint.

64. Federal denies the allegations in paragraph 64 of the Complaint.

**COUNT III**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Bulfinch)**

65. Federal repeats and realleges the responses to the allegations in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. With respect to the allegations in paragraph 66 of the Complaint, Federal states it merely contains legal conclusions regarding the duty of good faith and fair dealing to which a response is not required. To the extent a response may nonetheless be deemed required, Federal states that there was no breach of the duty of good faith and fair dealing with respect to this matter, and therefore denies the allegations in paragraph 66.

67. Federal denies the allegations in paragraph 67 of the Complaint.

68. Federal denies the allegations in paragraph 68 of the Complaint.

**COUNT IV**

**(Bad Faith Claims Handling– Bulfinch and Federal – R.I. Gen. Laws § 9-1-33 (1956))**

69. Federal repeats and realleges the responses to the allegations in paragraphs 1

through 68 of the Complaint as if fully set forth herein.

70. With respect to the allegations in paragraph 70 of the Complaint, Federal states that it merely contains legal conclusions regarding the duty of good faith and fair dealing to which a response is not required. To the extent a response may nonetheless be deemed required, Federal states that there was no breach of the duty of good faith with respect to this matter, and therefore denies the allegations in paragraph 70 as stated.

71. Federal denies the allegations in paragraph 71 of the Complaint.

72. Federal denies the allegations in paragraph 72 of the Complaint.

73. Federal denies the allegations in paragraph 73 of the Complaint.

74. Federal denies the allegations in paragraph 74 of the Complaint.

75. Federal denies the allegations in paragraph 75 of the Complaint.

76. Federal denies the allegations in paragraph 76 of the Complaint.

77. Federal denies the allegations in paragraph 77 of the Complaint.

78. Federal denies the allegations in paragraph 78 of the Complaint.

**COUNT V**

**(Tortious Interference with Contractual Relations – Federal)**

79. Federal repeats and realleges the responses to the allegations in paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80. With respect to the allegations in paragraph 80 of the Complaint, Federal admits that FFG and Fleet were parties to the Insurance Policy. Federal denies the remaining allegations in paragraph 80 as stated.

81. With respect to the allegations in paragraph 81 of the Complaint, Federal admits that it (but not "Chubb") was aware of the Insurance Policy, and further states that the Claim Administration Agreement speaks for itself. Federal denies the remaining allegations in that paragraph.

82. Federal denies the allegations in paragraph 82 of the Complaint.

83. With respect to the allegations in the first sentence of paragraph 83 of the

Complaint, Federal states that it was a reinsurer under a Certificate of Facultative Casualty Reinsurance, which speaks for itself. Federal denies the remaining allegations in paragraph 83.

84. Federal denies the allegations in paragraph 84 of the Complaint.

85. With respect to the allegations in the first sentence of paragraph 85 of the Complaint, Federal states that its obligations are set forth in the Claim Administration Agreement, which speaks for itself, and therefore denies the allegations as stated. Federal denies the allegations in the second sentence of paragraph 85 of the Complaint.

86. Federal denies the allegations in paragraph 86 of the Complaint.

87. Federal denies the allegations in paragraph 87 of the Complaint.

88. Federal denies the allegations in paragraph 88 of the Complaint.

**COUNT VI**

**(Negligence – Federal)**

89. Federal repeats and realleges the responses to the allegations in paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90. Federal denies the allegations in paragraph 90 of the Complaint.

91. Federal denies the allegations in paragraph 91 of the Complaint.

92. Federal denies the allegations in paragraph 92 of the Complaint.

93. Federal denies the allegations in paragraph 93 of the Complaint.

94. With respect to the allegations in paragraph 94 of the Complaint, Federal states that its obligations are set forth in the Claim Administration Agreement, which speaks for itself, and therefore denies the allegations.

95. Federal denies the allegations in paragraph 95 of the Complaint.

96. With respect to the allegations in paragraph 96 of the Complaint, Federal states that its obligations are set forth in the Claim Administration Agreement, which speaks for itself, and therefore denies the allegations as stated.

97. Federal denies the allegations in paragraph 97 of the Complaint.

98. Federal denies the allegations in paragraph 98 of the Complaint.

99. Federal denies the allegations in paragraph 99 of the Complaint.

100. Federal denies the allegations in paragraph 100 of the Complaint.

101. Federal denies the allegations in paragraph 101 of the Complaint.

102. Federal denies the allegations in paragraph 102 of the Complaint.

103. Federal denies the allegations in paragraph 103 of the Complaint.

104. All of the allegations of the Complaint which have not been admitted, denied, qualified or otherwise responded to are hereby denied, including all allegations concerning damages and other relief.

**THIRD DEFENSE**

Coverage is barred because the amounts sought in the RSI Employment Claims do not constitute a "**Loss**" under the Policy and are uninsurable as a matter of public policy.

**FOURTH DEFENSE**

Coverage is barred by the exclusion in the Policy for **Loss** (other than **Defense Costs**) on account of any **Claim** "based upon, arising from or in consequence of any actual or alleged breach of any written employment contract, except to the extent that the **Insured** would have been liable in the absence of such written employment contract."

**FIFTH DEFENSE**

Coverage is barred by the exclusion in the Policy for **Loss** on account of any **Claim** "based upon, arising from or in consequence of liability of others assumed by the **Insured** under any contract or agreement, oral or written."

**SIXTH DEFENSE**

Coverage is barred by the exclusion in the Policy for **Loss** (other than **Defense Costs**) "which constitutes **Benefits** due, or to become due, or the equivalent value of such **Benefits**."

**SEVENTH DEFENSE**

Coverage is barred by the exclusion in the Policy for **Claims** based on "an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (except Section 510), the Fair Labor Standards Act

(except the Equal Pay Act), . . . the Worker Adjustment and Retraining Notification Act . . . rules or regulations promulgated thereunder and amendments thereto or similar provisions of any federal, state or local statutory or common law."

## EIGHTH DEFENSE

Coverage is barred by the exclusion in the Policy for **Loss** from a **Claim** based upon, arising from, or in consequence of "any actual or alleged purchase, sale or distribution of or offer, representation or agreement relating to securities."

## NINTH DEFENSE

Coverage is barred by the exclusion in the Policy for **Loss** on account of any **Claim** made against any **Insured** "as respects BancBoston Corporation, based upon, arising from, or in consequence of **Wrongful Acts** or **Related Wrongful Acts** where all of [sic] any part of such acts were committed, attempted, or allegedly committed or attempted prior to October 1, 1999."

## TENTH DEFENSE

There is no coverage for the RSI Settlement because Fleet entered into that agreement without the prior written consent of FFG.

## ELEVENTH DEFENSE

Coverage is barred to the extent that the Insured(s) made material misrepresentations in the Application for the Policy.

## TWELFTH DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver and estoppel.

## THIRTEENTH DEFENSE

Coverage is barred because the Insureds breached the duty to cooperate.

## FOURTEENTH DEFENSE

Coverage is barred and/or limited by the "other insurance" clause of the Policy.

## FIFTEENTH DEFENSE

Coverage is barred to the extent that the Insureds breached the terms and conditions of the Policy.

**SIXTEENTH DEFENSE**

Chubb & Son Inc. and The Chubb Corporation were not parties to any of the contracts at issue.

**SEVENTEENTH DEFENSE**

This Court lacks personal jurisdiction over Chubb & Son Inc. and The Chubb Corporation.

**EIGHTEENTH DEFENSE**

Chubb & Son Inc. and The Chubb Corporation were not properly served.

**NINETEENTH DEFENSE**

The Policy is subject to and limited by all of its terms, conditions, definitions, limits of liability, retentions and exclusions that operate to bar or limit coverage for some or all of the amounts for which Plaintiffs seek coverage, including, to the extent incorporated therein, the terms, exclusions, conditions and limitations of any underlying policies. Federal reserves the right to raise affirmatively other terms, conditions, definitions, and exclusions contained in the Policy as defenses to coverage as appropriate.

WHEREFORE, having fully responded to the Complaint, Federal respectfully requests that the Complaint be dismissed, that the Court enter judgment in favor of Federal, that Federal be awarded its costs and attorney's fees, and that the Court grant such other and further relief as it may deem just.

**COUNTERCLAIM OF DEFENDANT FEDERAL INSURANCE COMPANY**

Defendant Federal Insurance Company hereby sues Plaintiffs Robertson Stephens, Inc. and Bank of America Corporation and alleges as follows:

**PARTIES**

1. Upon information and belief, Plaintiff Bank of America Corporation ("Bank of America") is a Delaware corporation with its principal place of business in North Carolina. Upon information and belief, Bank of America is the successor-in-interest to FleetBoston

Financial Corporation ("Fleet") by virtue of a merger whereby Fleet was merged into Bank of America. All references herein to Fleet shall refer to and include Bank of America.

2. Upon information and belief, at all times relevant to this insurance action, Fleet, a bank holding company, was a Rhode Island corporation with its principal place of business in Rhode Island.

3. Upon information and belief, Plaintiff Robertson Stephens, Inc. ("RSI") is a Massachusetts corporation that operated as an investment bank and securities firm with a principal place of business in San Francisco, CA. Upon information and belief, at all relevant times Fleet's wholly owned subsidiary Robertson Stephens Group, Inc. ("RSGI") was the holding company for RSI. For the purposes of this Counterclaim RSGI, the holding company, and RSI shall be referred to collectively as "RSI." Except when otherwise stated, Fleet and RSI are herein collectively referred to as "the Plaintiffs."

4. Defendant Federal Insurance Company ("Federal") is a corporation organized and incorporated under the laws of the State of Indiana, and has its principal place of business now and at the time this action was commenced in New Jersey.

**FACTS**

**A. The Policy**

5. Fleet and FFG Insurance Co. Ltd. ("FFG") were parties to a primary insurance policy styled as a "Combined Risk Protection Program," bearing Policy Number FFG 00004 (the "Policy"), whereby FFG agreed to insure Fleet and its subsidiaries, including RSI, against certain losses that might be incurred by Fleet or by its subsidiaries. FFG was a so-called "captive" insurer and a wholly-owned subsidiary of Fleet. Upon information and belief, Defendant Bulfinch Indemnity Company, Ltd. ("Bulfinch") is the successor-in-interest to FFG. Like FFG, Bulfinch is a "captive" insurer of Fleet and Fleet's successor-in-interest Bank of America. All references herein to FFG shall refer to and include Bulfinch.

6. The Policy was originally issued for the Policy Period of October 1, 1999 to January 1, 2003.

7. The Policy contained an Employment Practices Liability ("EPL") Section. Subject to its terms, conditions, limitations and exclusions, the EPL Section provided coverage for "all **Loss** for which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by an **Insured** before or during the **Policy Period**."

8. Under the EPL Section, "**Claim**" was defined, in pertinent part, to mean:

(i) a written demand for monetary or non-monetary relief;

(ii) a civil proceeding commenced by the service of a complaint or similar pleading, including any appeal therefrom; [or]

(iii) an arbitration proceeding.

9. The EPL Section of the Policy defined "**Wrongful Act**" to mean:

any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, by an **Insured Organization** or by an **Insured Person**, individually or otherwise, in his **Insured Capacity**, or any matter claimed against an **Insured Person** solely by reason of his serving in such **Insured Capacity**.

10. The EPL Section defined "**Loss**" to mean:

The total amount which any **Insured** becomes legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** and the Extended Reporting Period, if exercised, made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, pre and post judgment interest, settlements, costs, court-awarded attorney fees, and **Defense Costs**. **Loss** does not include:

(i) any amount not indemnified by the **Insured Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order;

(ii) the future salary or benefits of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution;

(iii) fines or penalties imposed by law; however fines or penalties shall not include:

(a) punitive or exemplary damages;

(b) liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act;

(c) the multiple portion of any multiplied damage award,

if such damages are insurable under the law applicable to this coverage; and

(iv) matters uninsurable under the law pursuant to which this coverage section is construed.

11. In addition, the Policy contained certain exclusions, limitations and conditions of coverage, including the following:

(a) Paragraph 3(c) of the EPL Section excluded coverage for **Loss** on account of any **Claim** "for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (except Section 510), the Fair Labor Standards Act (except the Equal Pay Act), . . . the Worker Adjustment and Retraining Notification Act . . . rules or regulations promulgated thereunder and amendments thereto or similar provisions of any federal, state or local statutory or common law."

(b) Paragraph 3(h) of the EPL Section excluded coverage for **Loss** on account of any **Claim** "based upon, arising from or in consequence of (ii) any actual or alleged . . . distribution of or offer, representation or agreement relating to securities . . ."

(c) Paragraph 3(i) of the EPL Section excluded coverage for **Loss** on account of any **Claim** "based upon, arising from or in consequence of liability of others assumed by the **Insured** under any contract or agreement, oral or written, except to the extent that the **Insured** would have been liable in the absence of the contract or agreement."

(d) Paragraph 3(j) of the EPL Section excluded coverage for **Loss** on account of any **Claim** "as respects BancBoston Corporation, based upon, arising from, or in consequence of **Wrongful Acts** or **Related Wrongful Acts** where all o[r] any part of such acts were

committed, attempted, or allegedly committed or attempted prior to October 1, 1999."

(e) Paragraph 3(1) excluded coverage for **Loss** (other than **Defense Costs**) "which constitutes **Benefits** due, or to become due, or the equivalent value of such **Benefits**. . ." The Policy in turn defined the term "**Benefits**" to mean "perquisites, fringe **Benefits**, payments in connection with an employee benefit plan and any other payment, other than salary or wages, to or for the benefit of an employee arising out of the employment relationship."

(f) Paragraph 3(5) of the EPL Section excluded coverage for **Loss** (other than **Defense Costs**) on account of any **Claim** "based upon, arising from or in consequence of any actual or alleged breach of any written employment contract, except to the extent that the **Insured** would have been liable in the absence of such written employment contract."

12. The Policy further required that the **Insureds**, as a condition precedent to coverage under the Policy, give FFG "written notice of any **Claim** made against any of them for a **Wrongful Act** after any **Insured** determines it is reasonably possible that **Loss** on account of such **Claim** will meet or exceed $5,000,000. Such notice shall be given as soon as practicable after such determination but in no event later than 30 days following the effective date of termination or nonrenewal." In addition, the Policy required Fleet to give notice of any "**Claim**" or "**Loss**" to either FFG or its Claim Manager.

13. The Policy further provided that the Insured could not "settle any **Claim**, incur any **Defense Costs** in an amount greater than $5,000,000, assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's [FFG] written consent, which shall not be unreasonably withheld." The Policy further provided that FFG would "not be liable for any settlement and/or **Defense Costs** above $5,000,000, assumed obligation or admission to which it has not consented."

14. Finally, the Policy provided that "[n]o coverage shall attach from this policy until [Fleet] has incurred a **Retention** amount per loss or claim. . ." The "**Retention** amount" under the Policy was $10,000,000.

**B. The Claim Administration Agreement**

15. As of October 1, 1999, FFG and Chubb & Son, a division of Federal Insurance Company, entered into a "Claim Administration Agreement." The Claim Administration Agreement provided that FFG granted to Chubb & Son "the authority to receive, review and evaluate any **Claims** under the **Policy**" and "the authority to deny, negotiate, adjust or settle any claims made under [the] **Policy** only with the express written permission of [FFG] . . . ."

16. The Claim Administration Agreement also provided that Chubb & Son had "full authority to interpret policy language, make coverage decisions, and to settle covered Claims for any amount up to the Policy limits," and that "[a]ll decisions with respect to the ultimate disposition of a **Claim** under the Policy's limits shall be made by Chubb." However, at all relevant times, Chubb acted solely as the agent of FFG in handling and otherwise administering the claims brought by Fleet under the Policy.

**C. The Reinsurance Agreement**

17. In addition to the Claim Administration Agreement, Federal also was one of the reinsurers of coverage under the Policy. Pursuant to the terms of the Certificate of Facultative Casualty Reinsurance (the "Reinsurance Agreement") that Federal entered into with FFG, Federal agreed to provide a quota share of 30% of the $100,000,000 reinsurance limit of liability.

18. In particular, the Reinsurance Agreement provided Federal would indemnify FFG (per its "quota share" of 30%) against the "**Ultimate Net Loss** that the **Company** [FFG] is legally obligated to pay with respect to which insurance is afforded during the term of this Certificate under the policy reinsured, excluding **Extra Contractual Obligations**. . ."

19. The Reinsurance Agreement defined the term "**Ultimate Net Loss**" to include the sum paid by FFG or for which FFG "becomes liable in settlement of claims and/or in satisfaction of judgments rendered on account of such claims under the Policy. . ."

20. The Reinsurance Agreement also provided that Federal's "obligations under this Certificate shall run only to the **Company**. No one other than the **Company** or its liquidator, rehabilitator, receive, conservator or statutory successor . . . has any rights hereunder. The

**Reinsurer** shall have no obligation to the original insurer, any claimant or any other third party. . ."

D. **The RSI Employment Claims**

21. Todd Carter ("Carter"), John Conlin ("Conlin"), Kenneth R. Fitzsimmons ("Fitzsimmons"), and G. Mitchell Whiteford ("Whiteford") were former members of RSI's Executive Committee (collectively, the "Executives").

22. Upon information and belief, in May 1998, Carter, Fitzsimmons and Whiteford entered into written employment agreements with BancBoston Corporation and BancBoston Securities pertaining to their employment at RSI, a BancBoston subsidiary. Conlin entered into a written employment agreement with BancBoston in May 1999. In October 1999, Fleet and BancBoston merged; thus, as a result RSI became a subsidiary of Fleet.

23. On July 12, 2002, Fleet announced that RSI would cease its broker-dealer operations. On that day, RSI began the process of closing out its positions, winding down its business operations, and terminating employees. Upon information and belief, the Executives were terminated in August 2002.

24. The Executives contended that they were entitled to receive compensation, severance pay and other benefits from Fleet as a consequence of the termination of their employment. On June 4, 2003, counsel for the Executives sent to Fleet a draft Statement of Claim and a draft Complaint and threatened to file those claims if Fleet refused to pay the Executives the benefits to which they claimed they were entitled.

25. The Executives alleged that Fleet was obligated to pay each of them compensation, severance payments and other benefits pursuant to the terms of written contracts assumed by Fleet when it acquired BankBoston Corporation and BancBoston Securities, and also pursuant to the terms of certain agreements that Fleet had entered into directly with the Executives. Specifically, the Executives alleged that Fleet breached its contracts with each of them by, among other things: (a) forfeiting the Executives' rights to obtain equity shares in RSI ("RSI Restricted Units"); (b) refusing to make bonus payments to which they were entitled; (c)

failing to procure directors and officers liability insurance on their behalf; and (d) failing to make severance payments to which each was entitled upon the termination of his employment. The Executives alleged that each of the foregoing constituted a breach of the written agreements between Fleet and the Executives (or the agreements between the Executives and BankBoston Corporation and BancBoston Securities that Fleet had assumed).

26. The Executives also alleged that they were entitled to amounts due under the Worker Adjustment and Retraining Notification Act (the "WARN Act"). In addition, the draft Complaint and draft Statement of Claim alleged violations of the California Labor Code.

**E. The Settlement and Coverage Dispute**

27. By letter dated June 20, 2003, Fleet forwarded to Federal and FFG copies of the draft Complaint and draft Statement of Claim.

28. The Policy provided that, as a condition precedent to coverage, that Fleet is obligated to provide written notice to FFG or Federal when it has determined that "it is reasonably possible that **Loss** on account of such **Claim** will meet or exceed $5,000,000." At the time Fleet forwarded the draft Complaint and draft Statement of Claim to FFG, it did not inform FFG or Federal that it had made any such determination. To the contrary, Fleet initially informed FFG and Federal that there were no enforceable contracts between it and the Executives. Nor did Fleet request that FFG appoint, retain or approve counsel to represent Fleet, or otherwise assume control of the matter. Instead, Fleet retained its own counsel and engaged directly in negotiations with the Executives on its own.

29. On December 29, 2003 – some six months after Fleet forwarded the draft Statement of Claim and draft Complaint to FFG – Fleet first advised Federal that it anticipated a **Loss** in excess of the $10,000,000 retention in the Policy and sought coverage under the Policy for a potential settlement of the claims asserted by the Executives. Upon information and belief, Fleet had already agreed to a settlement with the Executives in a specific amount exceeding $10,000,000, of which Federal was advised at that time.

30. In response, Federal immediately requested detailed information from Fleet so that it could evaluate the claims asserted by the Executives and the defenses to those claims, and to determine whether and to what extent (if any) the claims were covered by the Policy.

31. On January 9, 2004, Fleet advised Federal that it had agreed to settle the claims brought by the Executives for the amount previously described to Federal on December 29, 2003 (the "RSI Settlement").

32. Fleet neither requested nor obtained FFG or Federal's consent prior to agreeing to enter into the settlement.

33. Under the terms of the RSI Settlement, the Executives released Fleet and RSI from claims for: breach of written contract; any interest in any benefit plan of RSI and/or Fleet; interests in compensation and investment plans with RSI granted as a benefit of employment; shares of bonus-related Fleet restricted stock; and any interests in the RSI Restricted Unit Plan. In addition, the Executives released Fleet and RSI from "claims for salary or severance payments other than those set forth in [the RSI Settlement]"; "claims for employment benefits except as set forth in [the RSI Settlement]"; and claims under federal, state and local law, including but not limited to claims arising under ERISA, COBRA and the WARN Act.

34. Fleet sought coverage for the RSI Settlement under the Policy. In its capacity as FFG's agent with respect to claims handling, Federal (through its unincorporated division, Chubb & Son) responded to that coverage claim by letter dated February 25, 2004.

35. In that letter, Federal advised Fleet of a number of significant limitations and exclusions of coverage with respect to the RSI Settlement, specifically reserving its rights to maintain that coverage was not available on those (or any other applicable) grounds. Among other things, Federal advised Fleet that the Policy does not afford coverage for: (a) obligations voluntarily undertaken by Fleet; (b) **Loss** (other than **Defense Costs**) which constitutes **Benefits** due an employee; (c) **Loss** (other than **Defense Costs**) on account of any **Claim** based upon, arising from or in consequence of any actual or alleged breach of any written employment agreement; (d) **Loss** for an actual or alleged violation of the WARN Act and/or COBRA; (e)

**Loss** based upon, arising from, or in consequence of any agreement relating to securities; and (f) matters uninsurable under governing law. Federal further informed Fleet that settlements made without the prior written consent of FFG were excluded from the coverage of the Policy, and noted that FFG had not consented to the RSI Settlement.

36. Fleet disputed the coverage position set forth in Federal's February 25, 2004 letter, and have alleged that Federal and FFG were obligated to indemnify it for the RSI Settlement.

37. Plaintiffs have brought this action against Federal and Bulfinch, FFG's successor-in-interest. Plaintiffs have alleged in their Complaint that Fleet is entitled to coverage under the Policy for the RSI Settlement, and that Federal and FFG's coverage position with respect to the RSI Settlement constituted "bad faith."

**COUNT I**

**(Declaration – Non-Coverage)**

38. The foregoing allegations are realleged and incorporated by reference herein.

39. A justiciable controversy exists between Federal on the one hand and Plaintiffs on the other hand, concerning insurance coverage for the RSI Settlement under the Policy.

40. Plaintiffs have alleged that Fleet is entitled to coverage under the Policy for the RSI Settlement, and also allege that Federal's coverage position with respect to that settlement, and Federal's handling of the claim, was in bad faith. Pursuant to the Claim Administration Agreement, Federal has an obligation to indemnify FFG for its liability to the extent caused by Federal's violation of statutory or regulatory provisions. In addition, under the terms of the Reinsurance Agreement, Federal must indemnify FFG for 30 percent of the "**Ultimate Net Loss**" that FFG is legally obligated to pay in settlement of claims and/or in satisfaction of judgments rendered on account of such claims made under the Policy.

41. Federal has an interest in the issue of whether insurance coverage exists for the RSI Settlement, and that issue presents a justiciable controversy. Entry of a declaratory judgment is therefore necessary and appropriate to avoid the risks and uncertainty arising out of the above-described controversy.

42. Coverage for the RSI Settlement is barred by several terms, conditions, limitations and exclusions of the Policy.

43. Both the draft Statement of Claim and draft Complaint assert claims for breach of the written employment contracts between the Executives and Fleet or that Fleet assumed when it acquired BankBoston Corporation and BancBoston Securities. Accordingly, coverage for the RSI Settlement is barred by the exclusion in the Policy for **Loss** (other than **Defense Costs**) on account of any **Claim** "based upon, arising from or in consequence of any actual or alleged breach of any written employment contract, except to the extent that the **Insured** would have been liable in the absence of such written employment contract."

44. Coverage is also barred by the exclusion for **Loss** on account of any **Claim** "based upon, arising from or in consequence of liability of others assumed by the **Insured** under any contract or agreement, oral or written," as the claims asserted by the Executives were based upon certain agreements that Fleet assumed when it acquired BankBoston Corporation and BancBoston Securities.

45. The payments made under the RSI Settlement were expressly in satisfaction of claims for bonuses, awards, stock, insurance coverage and other employee benefit plans. Accordingly, coverage for the RSI Settlement is barred by the exclusion for **Loss** (other than **Defense Costs**) "which constitutes **Benefits** due, or to become due, or the equivalent value of such **Benefits**," which is defined under the Policy as "perquisites, fringe **Benefits**, payments in connection with an employee benefit plan and any other payment, other than salary or wages, to or for the benefit of an employee arising out of the employment relationship."

46. There also is no coverage for the RSI Settlement because it constitutes the payment of monies that Fleet had no lawful right to possess in the first place, namely the satisfaction of Fleet's contractual obligations to pay certain compensation, salary, bonuses and other benefits due to the Executives. Fleet's pre-existing, contractual obligation to pay salary and other compensation to those employees simply does not constitute an insurable "**Loss**" within the plain meaning of that term.

47. The RSI Employees alleged violation of the responsibilities, obligations or duties imposed upon Fleet and/or RSI by the Fair Labor Standards Act, the WARN Act and similar provisions of federal and state statutory law, and the RSI Settlement constituted an express satisfaction of those claims. Coverage for those allegations is barred by the exclusion in the Policy for any **Claim** based on "an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (except Section 510), the Fair Labor Standards Act (except the Equal Pay Act), . . . the Worker Adjustment and Retraining Notification Act . . . rules or regulations promulgated thereunder and amendments thereto or similar provisions of any federal, state or local statutory or common law."

48. The Executives alleged that Fleet had failed to award them certain restricted shares in RSI (the "Restricted Units") that they alleged they were due under the Restrict Unit Award Agreements, and the RSI Settlement was expressly in satisfaction of those claims. Accordingly, coverage for the RSI Settlement is barred by the exclusion in the Policy for **Loss** from a **Claim** based upon, arising from, or in consequence of "any actual or alleged purchase, sale or distribution of or offer, representation or agreement relating to securities."

49. The Executives alleged that Fleet had assumed, and failed to perform, BancBoston's obligations to them under BancBoston employment agreements that were entered into prior to October 1, 1999, including the obligation to purchase directors and officers liability insurance for RSI employees. Thus, coverage for the RSI Settlement is barred by the exclusion in the Policy for **Loss** on account of any **Claim** made against any **Insured** "as respects BancBoston Corporation, based upon, arising from, or in consequence of **Wrongful Acts** or **Related Wrongful Acts** where all of [sic] any part of such acts were committed, attempted, or allegedly committed or attempted prior to October 1, 1999."

50. Fleet entered into the RSI Settlement without the prior written consent of FFG. As noted, the Policy provided that Fleet would not "settle any **Claim**, incur any **Defense Costs** in an amount greater than $5,000,000, assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent," and also provided that FFG

would "not be liable for any settlement and/or **Defense Costs** above $5,000,000, assumed obligation or admission to which it has not consented." Thus, there is no coverage for the RSI Settlement.

51. Accordingly, Federal is entitled to a declaration that there is no coverage under the Policy for the RSI Settlement.

WHEREFORE, Defendant Federal Insurance Company respectfully requests that the Court enter a judgment declaring the rights as set forth herein, awarding Federal its costs and attorney's fees and granting such other and further relief as the Court may deem just.

Respectfully submitted,

Stephen J. Reid, Jr., Bar Id No. 2811
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, R.I. 02903
Tel: (401) 831-8900
Fax: (401) 751-7542

Of Counsel:

Jonathan A. Constine
Douglas S. Crosno
HOGAN & HARTSON L.L.P.
555 13th Street, N.W., Suite 800E
Washington, D.C. 20004
Tel: (202) 637-5870
Fax: (202) 637-5910

Attorneys for Defendant
Federal Insurance Company

Dated: December 21, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2005, I caused a true copy of the foregoing Answer And Counterclaim to be mailed to:

Steve E. Snow, Esq.
Howard A. Merten, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

S. Elaine McChesney, Esq.
Anthony M. Fuller, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Matthew F. Medeiros, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

Geoffrey J. Vitt, Esq.
Vitt & Rattingan, PLC
8 Beaver Meador Road
P.O. Box 1229
Norwich, VT 05055-1229

Jonathan A. Constine, Esq.
Douglas S. Crosno, Esq.
Hogan Hartson, LLP
555 13th Street, N.W.
Washington, DC 20004

[signature]