**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**

**Plaintiffs,**

v.

**CHUBB CORPORATION, FEDERAL INSURANCE CO., CHUBB & SON, INC. and BULFINCH INDEMNITY COMPANY, LTD., as the successor to FFG INSURANCE CO., LTD.**

**Defendants.**

**Case No. 05-0360-S-LDA**
**Jury Trial Demanded**

**PLAINTIFFS' OBJECTION**
**TO FEDERAL INSURANCE CO.'S MOTION TO DISMISS**

Plaintiffs Robertson Stephens, Inc. and Bank of America Corp. hereby object to the defendant Federal Insurance Co.'s Motion to dismiss on the grounds set forth in the accompanying memorandum.

Respectfully submitted,

**ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**

By its attorneys,

Steven E. Snow, R.I. Bar No. 1774
Howard Merten, R.I. Bar No. 3171
**PARTRIDGE SNOW & HAHN LLP**
180 South Main Street
Providence, RI 02903
(401) 861-8200

Of Counsel:

S. Elaine McChesney, BBO #329090
Jennifer W. Corinis, BBO #647247
Lara N. Gelbwasser, BBO #657376
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Dated: January 30, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' OBJECTION TO FEDERAL INSURANCE CO.'S MOTION TO DISMISS was mailed, postage prepaid, on this 30th day of January, 2006

Stephen J. Reid, Jr., Esq.
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903

Jonathan A. Constine, Esq.
Douglas S. Crosno, Esq.
HORGAN & HARTSON L.L.P.
555 13th Street, N.W., Suite 800E
Washington, D.C. 20004

Geoffrey J. Vitt, Esq.
Vitt & Rattigan
Eight Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055

Matthew F. Medeiros, Esq.
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903

838603_1/4150-30

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CHUBB CORPORATION, FEDERAL INSURANCE CO., CHUBB & SON, INC. and BULFINCH INDEMNITY COMPANY, LTD., as the successor to FFG INSURANCE CO., LTD.**<br><br>**Defendants.** | **Case No. 05-0360-S-LDA**<br>**Jury Trial Demanded** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION**
**TO FEDERAL INSURANCE CO.'S MOTION TO DISMISS**

Plaintiffs Robertson Stephens, Inc. and Bank of America Corp. ("Fleet" or "the Insured") oppose the Motion to Dismiss filed by Federal Insurance Co. ("Federal"). Federal concedes the facts set forth in the Complaint and acknowledges that it committed acts that constitute bad faith settlement practices. It nonetheless moves to dismiss the tort claims against it on the ground that Federal was simply "an adjuster" and not a party to the contract of insurance, ignoring allegations in the Complaint to the contrary, and mistakenly relying on notions of privity that are inapplicable in tort actions. Federal's motion has no merit: (1) the undisputed facts show that Federal was not a "mere adjuster" and that all the cases relied on by Federal are thus inapplicable; (2) Rhode Island law as well as the express undertakings by Federal for the benefit of Fleet irrefutably gave rise to a duty of due care on the part of Federal; (3) the Rhode Island tort of bad faith settlement applies to administrators such as Federal; (4) the claims against Federal are tort claims, not contract claims, so that Federal's privity or lack thereof is legally irrelevant. The tort claims against Federal are well-stated and well-pled, and Federal's motion must be denied.

## LEGAL ARGUMENT

### I. <u>Rhode Island Law Governs This Action.</u>

While Federal correctly states the Rhode Island choice of law rubric, its choice of law analysis is erroneous. All of the choice of law factors compel a conclusion that Rhode Island and not California law governs this action. For tort actions, the Supreme Court of Rhode Island has adopted an "interest-weighing" approach, *Woodward v. Stewart*, 104 R.I. 290, 299-30 (1968); *Oyola v. Burgos*, 864 A.2d 624, 627 (2005), to determine which state "bears the most significant relationship to the event and the parties." *Oyola*, 864 A.2d at 627 (quoting *Najarian v. National Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001)). This determination requires a fact specific inquiry which weighs (1) the predictability of the result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum state's interests; and (5) application of the better rule of law. *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 325 (1969); *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1352 (R.I. 1986). Thus, a Rhode Island court will consider (1) the place where the act occurred, (2) the place where the conduct causing the grievance occurred, (3) the place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Oyola*, 864 A.2d at 628 (citing *Najarian*, 768 A.2d at 1255); *Brown*, 105 at 326. "[T]he location of the injury is the most important factor in tort cases." *Oyola*, 864 A.2d at 628 (citing *Taylor v. Mass. Florida Reality Inc.*, 840 A.2d 1126, 1129 (R.I. 2004)).

Application of this standard compels a conclusion that Rhode Island law applies to Fleet's tort claims against Federal. The underlying claim and settlement was between Rhode Island corporation and resident Fleet and former employees of its subsidiary, Robertson Stephens, Inc. ("RSI"), a Massachusetts corporation. The insured, Fleet, was a Rhode Island corporation and resident, the economic injury to Fleet occurred in Rhode Island,[1] and

[1] Federal concedes that the injury occurred in either California or Rhode Island. Federal's assertion that the outcome would be the same under either Rhode Island or California law is disingenuous and inaccurate, as shown *infra*.

communications between the parties surrounding the underlying claim and the claims handling were to and from Fleet's Risk Management Office in Rhode Island. *See generally* Complaint at ¶¶ 2, 10, 22, 23, 29-45. Rhode Island's express public policy favoring its insureds in disputes with insurers also militates heavily in favor of application of Rhode Island law. *See, e.g., Crellin Technologies, Inc. v. Equipmentlease Corp.* 18 F.3d 1, 12 (1st Cir. 1994) ("Rhode Island has a substantial interest in protecting its resident companies from deceptive representations or unfair trade practices" and that "as the forum state, an application of Rhode Island's tort law would be more easily accomplished than an application of Massachusetts law"). Rhode Island overwhelmingly "bears the most significant relationship to the event and the parties."

Federal makes a feeble effort to argue that California law might apply (apparently in the belief that California law is more favorable), but offers no facts that would support such a result. While at one time RSI had a place of business in California, the underlying claim by the executives was made *after* the California office had ceased doing business, was made upon RSI and Fleet in Massachusetts, and was negotiated and resolved in Massachusetts and Rhode Island. More importantly, all communications and acts between Fleet and Federal -- which are the subject of the current claim -- occurred in Rhode Island and Massachusetts. The dispute here, of course, does not involve the underlying employee claims but the insurance dispute. None of the acts that form the basis for the tort claims against Federal occurred in California.

## II. Federal, As The Claims Administrator Of A Self-Insurer, Acted At All Times As An Insurer And Must Be Treated As Such.

Federal's entire brief is premised on the erroneous and highly misleading premise that its role was that of a routine, garden-variety adjuster. Federal cites over and over again to cases where insurers hire independent adjusters to review for them an individual auto accident or fire. Those cases bear no relation to these facts and this particular insurance arrangement. As the Claim Administration Agreement ("the Agreement")[2] makes clear, Bulfinch was the Captive

[2] The Claim Administration Agreement was attached as Exhibit D to the Complaint and incorporated therein. The Agreement is attached hereto as Exhibit A for convenience.

insurer of Fleet, *i.e.*, it was a legal entity owned by Fleet and established for purposes of running a self-insurance program. *See generally* Exhibit A; *see also* relevant pages from Bank of America Form 10-K (March 1, 2005) at p. 7, attached hereto as Exhibit B. As is typically the case with self-insurers, the Captive insurer Bulfinch contracted with Federal to perform all the duties of an insurer under the policy that Bulfinch issued to its parent company Fleet, save for ultimate payment on an approved claim. Federal accepted this delegation of all of the duties of an insurer. Federal was also the lead reinsurer under the policy and thus had a direct pecuniary interest in the risks covered thereunder.

The specific provisions of the Agreement on their face prove the complete delegation of all insurer duties to Federal and acceptance thereof by Federal. It was Federal that decided not to provide Fleet with a defense to the underlying claims. It was Federal that failed to act with reasonable promptness or to communicate with respect to claims for which it admitted there was coverage. It was Federal that refused and failed to conduct a reasonable investigation, that failed to affirm or deny coverage within a reasonable time, and that failed to provide any type of explanation for its acts.

The Agreement expressly states that it is intended for the benefit of a single, identified insured -- Fleet -- under a single policy. *See* §1. Pursuant to the Agreement, at all times Federal was the only entity dealing directly with Fleet in connection with claims made under the Policy. Indeed, the Agreement *required* Federal to deal directly with Fleet. *See* §2A. There is no provision in the Agreement for direct contact between Fleet and Bulfinch in connection with any aspect of the claims handling process. *See generally* Agreement. Federal was "responsible for handling all facets of a Claim through final settlement, including the investigation, recommendation of legal counsel, handling, negotiations, denial or settling of Claims." *See* §2B. Federal, not Bulfinch, had the power to decide whether to defend Fleet, including the power to select counsel and experts, to determine what types of coverage apply, and to determine the

amount of the claim. *Id.* Federal was responsible for all arrangements for attorneys, independent claims adjusters,[3] and other vendors. §7B. Indeed, as explicitly set forth in §2C, Federal had "full authority to interpret Policy language, make Policy coverage decisions, and to settle covered Claims for any amount up to the Policy limits." Bulfinch had no role and no say in coverage decisions, settlement decisions, or even the amount of any settlement or coverage decision. *Id. See also* §6. Bulfinch's sole duty was to write the check should Federal decide a check should be written. *See* §2F, §6(3). "All decisions with respect to the ultimate disposition of a Claim under the Policy's limits shall be made by Chubb (Federal)." §2E. Federal, not Bulfinch, had the power to decide, and was the entity that actually did decide, not to reimburse Fleet for its settlement of the underlying claim. Bulfinch's lack of control over Federal's settlement practices is demonstrated by §18 which states that Federal's "status will be that of an independent contractor in all relations with Captive."

In recognition of the fact that it was assuming the role of an insurer, Federal agreed "that it will comply with all applicable laws and regulations, including but not limited to those relating to claim settlement practice." *See* §3. Federal further agreed to indemnify Bulfinch <u>and its affiliates</u>, *i.e.,* its parent Fleet, for Federal's negligence in the performance of its duties under the Agreement or based upon Federal's violation of any applicable or regulatory provision. *See* § 10A (emphasis added). Both § 9-1-33 and § 27-9.1-2 are laws "relating to claim settlement practices." § 9-1-33 specifically addresses a bad faith refusal to pay or "settle a claim" or otherwise perform settlement obligations; § 27-9.1-1 is entitled "Unfair Claims Settlement Practices Act." Federal thus voluntarily and intentionally obligated itself contractually to comply with the provisions of these two statutes <u>for the benefit of Fleet</u>, the sole insured, and the only party against whom Federal could commit bad faith or unfair settlement practices.

---

[3] Belying Federal's efforts to define itself as a mere "adjuster," this provision demonstrates Federal was *not* a mere adjuster, but the insurer who hired and controlled the adjusters.

In sum, it is manifest that Federal acted as an insurer, performed its duties for the benefit of Fleet, assumed and owed the duties of an insurer to Fleet, and agreed to the imposition of Rhode Island's law, statutory or otherwise, with respect to its settlement practices in dealing with claims made by Fleet, the sole intended beneficiary of the Agreement. Given the factual realities of the relationship between Fleet, Federal, and Bulfinch, it is self-evident that Fleet may bring claims in tort against Federal for violations of its obligation and duties to Fleet.

Moreover, to the extent that Federal disputes the nature of the relationship as set forth in the Complaint and the Agreement, that is an issue of fact for the trier of fact and is not appropriate for decision on a motion to dismiss. In that case, then the trier of fact must engage in a fact specific inquiry based on the actual intent of the parties, the Agreement's language, and, most importantly, the parties' actual day-to-day conduct vis-à-vis one another. Those issues cannot be decided on this motion.[4] If, on the other hand, Federal admits the nature of its relationship with Fleet and with Bulfinch as described in detail above and in the Complaint, the motion to dismiss must be denied because, based on the relationship stated, Fleet has standing to bring claims in tort against Federal.

## III. Fleet Has Stated A Claim For Bad Faith Against Federal.

### A. Courts Routinely Uphold Common Law Tort-Based Claims Against Claims Administrators Such As Federal.

Federal did not bring to the Court's attention the well-established line of cases imposing bad faith tort liability on claims administrators where, as here, the claims administrator has primary control over and ultimate decision making in the claims settlement process.[5] Courts

[4] For purposes of resolving a motion to dismiss for failure to state a claim upon which relief can be granted, this Court "must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiff." *Rivera v. Rhode Island,* 402 F.3d 27, 33 (1st Cir. 2005). "Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). *Accord Sekuk Global Enterprises v. KVH Industries, Inc.*, 2005 WL 1924202, *5 (D.R.I. 2005).

[5] Instead, Federal cites only to cases that hold garden-variety claims adjusters liable and attempts to obscure or ignore that these cases represent a distinctly different principle of law: that of the liability of simple adjusters and not claims administrators. While Rhode Island courts have not addressed this

(Footnote Continued on Next Page.)

have allowed tort-based bad faith settlement actions against administrators like Federal under a variety of legal theories, including both ordinary and gross negligence, breach of the duty of good faith and fair dealing, third party beneficiary law, joint venture principles, as well as the existence of a "special relationship."

Several jurisdictions have analyzed the relationship between insured and administrator in simple negligence terms: did the administrator owe a duty to the insured, was the insured a foreseeably affected third party, and did the administrator violate that duty of care? *See, e.g.*, *Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 726-27, 506 A.2d 333 (N.H. 1986) (where independent insurance investigators were fully aware that the insured could be harmed financially if they performed their investigation in a negligent manner; investigators had an obligation to "exercise reasonable care in performing the work within the limits set by the insurer ...."); *Brown v. State Farm Fire & Cas. Co.*, 58 P.3d 217, 223 (Okla. Civ. App. 2002) (independent insurance investigators owe a duty to the insured as well as to the insurer to conduct a fair and reasonable investigation of an insurance claim); *Cont'l Ins. Co. v. Bayless and Roberts, Inc.*, 608 P.2d 281, 287-288 (Alaska 1980) (affirming denial of adjuster's motion for directed verdict, recognizing that "The law is well established that in the event of negligence by

---

(Footnote Continued from Previous Page.)

specific question, as outlined above, Rhode Island case law, statutes and legislative history point towards Rhode Island adopting the so-called "minority" view. That view is more in line with Rhode Island's strong public policy of protecting insureds and its abandonment of any privity requirement for tort cases of action. Moreover, the California decisions relied on by Federal rest on the fact that injury to the particular plaintiff was not foreseeable, that "the insurer, not the adjuster, has the ultimate power to grant or deny coverage, and to pay the claim, delay paying it, or deny it." *Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal. App. 4th 249, 253 , 84 Cal. Rptr.2d 799, 802 (1999), and that the adjuster was an agent hired to investigate a claim. *Id.* at 255, 803. Likewise, in *Gruenberg* decision turned on the fact that the employees of the insurer were "total strangers" to the insurance contract, who became involved only after the occurrence of the loss and claim. *See Delos v. Farmers Ins. Group, Inc.*, 93 Cal. App.3d 642, 651, 155 Cal. Rptr. 843, 848-49 (1979) (distinguishing *Gruenberg* and holding that a "management organization" or claims handler for the insurer, performing the functions of an insurer, subject to a bad faith action). The court noted there that were it to accept the claims handler's argument that "bad faith" liability may be imposed only on a party to the insurance contract, it would deprive a plaintiff of redress from the party primarily responsible for damages. *Id.* at 652-53, 849-50. In short, the California cases are actually consistent with Fleet's position.

a disclosed agent acting within the scope of his authority the agent may be held personally liable to a third party."). Courts have also allowed direct causes of action against claims administrators on the basis of "gross negligence, malice or reckless disregard for the rights of the insured." *See, e.g., Bass v. Cal. Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991).

Other jurisdictions have determined an adjuster independently owes a duty of good faith and fair dealing to the insured -- even where no privity of contract existed between the two -- because the adjuster/administrator exercised "primary control over benefit determinations" and "undertook many of the obligations and risks of an insurer." *See, e.g., Dellaira v. Farmers Ins. Exch.*, 102 P.3d 111, 115 (N.M. Ct. App. 2004) (reinstating claim against adjuster/administrator for breach of the duty of good faith and fair dealing where adjuster/administrator was responsible for the insurance function of claim determination, "a function inherent in the insurance transaction"); *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 797-798 (10th Cir. 1995) (reversing summary judgment in favor of insurance administrator on a bad faith tort claim where the administrator "undertook many of the obligations and risks of an insurer"); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1101 (Okla. 2005) (holding that insurer's affiliate, though not the named insurer on the policy, handled and adjusted the claim and acted as one entity with the insurer, such that the affiliate had a duty of good faith and fair dealing toward the insured because of this "special relationship"); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003) (en banc) (recognizing that an entity that did not issue the insurance policy, but "fulfilled virtually all of the functions normally performed by the insurance company in processing claims and determining whether to deliver insurance benefits," owed a duty of good faith and fair dealing to the insured).

Yet other courts have applied joint venture principles to allow claims against insurance adjusters such that *both* the insurer and the entity handling the investigation and payment of claims are found to owe a common duty to the insured to act in good faith. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132, Ariz. 529, 647 P.2d 1127, 1138 (Az. 1982) (en banc); *see also Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 969 P.2d 949 (Nev. 1999) (holding claims

administrator was joint venturer with insurer, subject to liability on contract, fraud and bad faith claims).[6]

Finally, courts have applied third-party beneficiary analysis to conclude that a direct cause of action in tort may be brought by an insured against a claims administrator. In *Beverly v. Macy*, 702 F.2d 931 (11th Cir. 1983), for example, the insurer, National Flood Insurers Association ("NFIA"), contracted with Hartford Insurance Group ("Hartford"), to handle and service all of the insurer's policies in Alabama. The plaintiff insured brought an action against Hartford, claiming status as third-party beneficiary under the contract between NFIA and Hartford, and challenging Hartford's failure to send out renewal and expiration notices as required by the service agreement. *Id.* at 933. The Eleventh Circuit Court of Appeals reversed the lower court's dismissal of the insured's claim, holding that the contract between insurer and agent created a contractual duty on the part of the agent to send the insured a premium due notice under the insured's flood insurance policy. *Id.* at 942-943. "[T]he intention of the parties disclosed by the writing and surrounding circumstances known to the parties, and not their motive, determines the rights of the third-party beneficiary." *Id.* at 941 (internal citations omitted); *see also Gardner & White Consulting Serv. Inc. v. Ray*, 222 Ga. App. 464, 466 (1996) (county employee had standing as third-party beneficiary of contract between county and health plan administrator to bring suit against administrator based on administrator's alleged breach of good faith and fair dealing in performing adjustment obligations under the agreement). The Restatement (Third) of Agency (Tentative Draft) at § 7.02[7] similarly recognizes that an agent is

---

[6] Pursuant to an agreement with the underwriter of the insurance policy, the servicing and soliciting agent in *Sparks* issued certificates of coverage, billed and collected premiums, and handled the investigation and payment of claims. 132 Ariz. at 539-540. The court held proper the submission of tort theories to the jury on the basis of joint and several liability of both the insurer and soliciting agent. *Id.* at 540. Like the agent in *Sparks*, Federal bore authority pursuant to the Claim Administration Agreement for handling the investigation and payment of claims for the benefit of Fleet. Thus, Federal is not insulated from liability, as it contends, simply because it "was an agent acting on behalf of a disclosed principal."

[7] Rhode Island courts have followed Restatement principles, including those of Restatement (Third) of Agency (Tentative Draft). *See Fraioli v. Lemcke*, 328 F. Supp. 2d 250, 278 (D.R.I. 2004); *Welsh Mfg.*, 474 A.2d at 440 (applying Restatement (Second) of Agency principles in holding employers directly

(Footnote Continued on Next Page.)

subject to liability in tort to a third party when the agent breaches a duty owed to the third party, and that such a duty may be found in tort law, where the agent undertakes a promise to the principal for the benefit of the insured, or when the agent assumes duties to the third party that are independent of the duties the agent owes the principal.

The common law legal theory of delegability of performance also recognizes the appropriateness of a bad faith claim against Federal. *See* E. Allan Farnsworth, Contracts §§ 11.10 - 11.11 (2nd ed. 1990). Here (by agreement) Bulfinch delegated to Federal all the obligations but one that Bulfinch owed to Fleet under the contract of insurance. Fleet was undeniably the intended beneficiary of the delegation agreement. *See* Restatement (Second) of Contracts § 318 (1981) (requirements for delegation agreement); § 704 (a promise in a delegation agreement can create a duty in the delegate).

**B. Federal Is Liable To Fleet Under Common Law Tort Principles Holding Claims Administrators Liable For Their Bad Faith Settlement Practices.**

The Rhode Island Supreme Court and the General Assembly have repeatedly and consistently stated Rhode Island's public policy in protecting its resident insureds from bad faith settlement practices by those engaged in the business of insurance, whether it be an insurer, an adjuster, or an administrator. Since the tort was first recognized in *Bibeault*, the General Assembly has enacted two statutes (§ 9-3-1 and § 27-9.1) to protect Rhode Island insureds from precisely the type of conduct Federal engaged in here.[8] The General Assembly could not have been clearer that Federal is covered by the Unfair Claims Settlement Practices Act and that the acts alleged here against Federal are per se violations of that Act. When Federal entered into the Claims Administration Agreement to handle and settle claims made by a Rhode Island insured, Federal voluntarily and knowingly submitted to the duties of good faith imposed by § 27-9.1-4.

---

(Footnote Continued from Previous Page.)

liable to third parties harmed by negligently hired employees; the court stated that its holding, while one of first impression, was not novel but merely an application of the standard of due and reasonable care under Rhode Island negligence principles).

[8] Federal could not administer this Agreement without engaging in insurance business in Rhode Island.

In 2002, in the context of relaxing its standard for finding that an insurer has engaged in bad faith settlement practices, the Supreme Court reiterated the Rhode Island public policy that "[i]nsurers doing business in Rhode Island have an implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review. An insurer has a responsibility to assemble all the facts necessary for a fair and comprehensive investigation before it refused to pay a claim. . . ." *Skaling,* 799 A.2d at 1010. Rhode Island's interest in protecting its citizens in the insurance context, along with the reasoning of analogous Rhode Island cases, weigh heavily in favor of this Court recognizing Fleet's claims against Federal.

Based on the relationship between Fleet, Federal, and Bulfinch, Fleet has stated a claim against Federal that would be recognized by Rhode Island under any and all the theories utilized by other states. As shown below, a negligence action plainly lies, as would a claim for gross negligence, malice or reckless disregard for the rights of the insured. *See infra* at Section VI. On these facts as pled, Fleet has stated a claim for breach of the duty of good faith and fair dealing, *see* pp. 8-9, *supra*, has presented evidence from which joint venture law could be applied, *see* p. 8, *supra*, and has demonstrated that it was an --indeed, the only -- intended third-party beneficiary of the Agreement between Federal and Bulfinch. *See* pp. 4-6, *supra*. Finally, the relationship here shows that Federal was acting as the insurer, in a special relationship for the benefit of the insured, and was the willing delegate of all the duties the insurer owed to Fleet. *See* pp. 4, 10, *supra.*

### C. Under Rhode Island Common Law, Federal Can Be Held Liable For Unfair Settlement Practices.

As shown above, Fleet has stated a claim against Federal on a variety of legal theories. Moreover, even though the Court does not have to go this far on this motion, Federal can be held liable at common law for unfair settlement practices. The tort of insurer bad faith is not a newly created cause of action. *See Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1012 at n. 8 (R.I. 2002). It has been a part of the Rhode Island common law since 1980. "An insurer doing business in

Rhode Island is obligated to act in good faith in its relationship with its policyholders. A violation of this duty will give rise to an independent claim in tort in which, as in the present controversy, there has been a specific finding that the insurer has in bad faith refused to pay the claims due an insured." *Bibeault Hanover Inc. Co.*, 417 A.2d 313, 319 (R.I. 1980). "The duty of an insured to deal fairly and in good faith with an insured is implied by law . . . violation of this duty sounds in contract as well as in tort. . . . ." *Id.*

This duty was subsequently codified in R.I.G.L. § 9-1-33 and, contrary to Federal's assertion, nothing in Rhode Island law suggests that that statute precludes an action against a claims administrator who acts as an insurer as does Federal here. Federal's sole argument is that it is not an "insurer" within the meaning of § 9-1-33, but Federal fails to mention that "insurer" is not defined in the statute. When interpreting § 9-1-33, the Rhode Island Supreme Court has turned to Title 27 of the Rhode Island General Laws, which governs insurers' conduct, for guidance; those statutory provisions explicitly do define Federal to be an insurer. *See Richard v. Blue Cross & Blue Shield*, 604 A.2d 1260 (R.I. 1992)[9]; *Skaling*, at 1012 (in bad faith tort action under § 9-1-33, court held that chapter 9.1 of title 27, the Unfair Claims Settlement Practices Act, sets "forth the statutory obligation imposed upon an insurer with respect to the handling of claims and that evidence of any breach thereof may be admissible in a civil action alleging bad faith").[10] *See also State v. Dearmas*, 841 A.2d 659 (R.I. 2004) ("We also endeavor to harmonize statutes and rules that address the same subject matter when we are asked to interpret them.").

---

[9] The Court there held that a nonprofit hospital service was not an insurer under § 9-1-33 because it was not included in the definition of insurer in Title 27. In 1993, in response to this decision, the General Assembly amended the definition of "insurer" in R.I.G.L. § 27-29-2 to add nonprofit hospital for medical service corporation, thus signaling the Legislature's intent that the definition of "insurer" in Title 27 controlled with respect to § 9-1-33.

[10] When Rhode Island enacted the Unfair Claims Settlement Practices Act in 1993, it adopted the same, expansive definition of "insurer" that the Legislature revised in the 1993 amendment to § 27-29-2. *See* R.I.G.L. § 27-9.1-2 ("'Insurer'" means any person, reciprocal exchange, interinsurer, Lloyds insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance, *including insurance producers, adjusters and third party administrators*") (emphasis added).

Moreover, assuming arguendo that § 9-1-33 applies only to insurers as opposed to administrators acting *qua* insurer, Fleet may still proceed against Federal under the common law tort as established in *Bibeault*. The mere fact that § 9-1-33 imposed a statutory duty on the insurer does not preclude an action at common law against the administrator for violation of its own duty of good faith. The cases Federal cites to support this argument simply do not support the proposition for which they are cited. For example, *Bartlett v. John Hancock Mutual Life Ins. Co.*, 583 A.2d 997 (R.I. 1988), states that an insured must establish that it is entitled to recover under and insurance contract before it can establish bad faith; it does not stand for the proposition that an insured must show privity of contract with the party accused of bad faith. The other cases cited by Federal are similarly unavailing; each addresses the very different -- and irrelevant -- question whether an individual employee of an insurer may be held liable for his or her employer's torts. *See, e.g., LeFranc v. Amica Mut. Ins. Co.*, 594 A.2d 382 (R.I. 1991). And, of course, none of these cases addresses facts similar to this case, where a claims administrator is responsible for only one insured, has an economic stake in the claims process, has stepped into the shoes of the insurer and assumed all of its duties and powers, and has accepted in writing the duty to comply with fair claims practice laws.

## IV. Fleet Has Stated A Claim In Negligence Against Federal.

### A. Rhode Island Negligence Law Neither Requires Privity Nor Does it Insulate An Agent From Its Independent Torts.

Federal's arguments rest on two misplaced premises: (i) that it cannot be held liable in tort because it was not in strict contractual privity with Fleet, and (ii) that it was simply an agent acting in the scope of its duties for a disclosed principal. Without discussion of whether these may be proper defenses in a contract action, there is no doubt that they simply do not apply in tort actions under Rhode Island law.

"There is no requirement of privity in Rhode Island to maintain an action in tort." *Forte Bros., Inc. v. Nat'l Amusements, Inc.*, 525 A.2d 1301, 1303 (R.I. 1987). *See also Bowen Court Associates v. Ernst & Young*, 818 A.2d 761, 727 n. 2 (2003) (strict privity is not required for

aggrieved third parties to bring suits against accounts for malpractice or negligence) (noting that only two states still retained the strict privity rule requiring a direct contractual relationship, and that states have applied a number of different alternative legal standards to establish liability, including "near privity," "known users," and the simple "reasonable foreseeability" standard).

Federal is similarly mistaken in its reliance on agency notions. Rhode Island has long followed "the well-settled general principle that holds that a person who acts as an acknowledged agent for a disclosed principal is independently liable for his own acts of negligence, despite the fact that these acts are committed in the course and scope of the agency and in furtherance of the disclosed principal's business." *Forte*, 525 A.2d at 1304 (Kelleher, J., concurring).[11]

### B. Fleet Has Adequately Pled Duty, Breach Of Duty And Damages Resulting From The Breach.

Fleet may maintain an action for negligence where it has pled a duty of care, breach of that duty, and damages resulting from the breach. *Forte*, 525 A.2d at 1303 (even in the absence of privity, third party may maintain a negligence action against architect/site engineer when it was foreseeable that third party could be injured by architect/site engineer's negligent performance of its job duties under contract with owner). Because the issues of breach and damages always present questions of fact not susceptible to a motion to dismiss, Federal's motion must rest on the existence of the duty. Under Rhode Island law, Federal owed a duty of due care to Fleet.

Under Rhode Island law, the duty on which a negligence claim is based may be created when the risk of injury to another is reasonably foreseeable, *Liu v. Striuli*, 36 F. Supp.2d 452, 466 (D.R.I. 1999), due to a special relationship between the parties, *Forte, supra*, or created by statute, *Errico v. LaMountain*, 713 A.2d 791, 793-94 (1998) (in an action for negligence against

---

[11] In his concurrence, Justice Kelleher explains that the *Cardente* case relied on by Federal is an exception to the rule because of the peculiarities of Rhode Island statutes dealing with foreign insurance companies, not applicable here. *See also* Restatement (Second) of Agency § 343 (an agent who commits a tort is not relieved from liability by the fact that the tort was committed while acting for a principal).

landlord based on failure to maintain leased premises in habitable condition, duty was created by statute and owed to plaintiff by operation of law). Under Rhode Island law, foreseeability is "the linchpin in the analysis of whether a duty flows from a defendant to a plaintiff." *Selwyn v. Ward*, 879 A.2d 882, 887 (R.I. 2005).

Federal undisputedly owed a duty of due care to Fleet. Because Fleet was the sole insured under the Policy and the sole intended beneficiary of the Agreement, it cannot be gainsaid that injury to Fleet was foreseeable. Indeed, Fleet is referenced by name ("FBC") eight times in the Agreement. Federal could not help but know that its negligence or intentional tortious conduct in the handling and settling of claims under the policy would impact Fleet, as the sole purpose of the Agreement was to affect and effectuate Fleet's -- and only Fleet's -- claims.

As in *Forte*, it cannot be questioned that Federal owed a duty to Fleet under foreseeability principles. In *Forte*, pursuant to an agreement between the owner and the architect, the architect was to administer the plaintiff's separate contract with the owner and to approve payments to plaintiff under that separate contract. The architect argued that he had no duty to the plaintiff based on the architect's negligent performance of his duties under his own contract with the owner, to which the plaintiff was not a party. After reiterating that Rhode Island negligence law does not require privity, the Rhode Island Supreme Court emphasized that the critical factor in identifying the duty owed is foreseeability: "Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contract." *Id.* at 1303 (quoting *United States v. Rogers & Rogers*, 161 F. Supp. 132, 136 (S.D. Cal. 1958). "To deny this plaintiff its day in court would, in effect, be to condone a supervising architect/site engineer's right to do its job negligently and with impunity as far as innocent third parties who suffer economic loss are concerned. *Id.* (citing *Conforti & Eisele , Inc. v. John C. Morris Associates*, 175 N.J. Super. 341, 344, 418 A.2d 1290, 1292 (1980), *aff'd*, 199 N.J. Super. 498, 489 A.2d 1233 (1985). So, too, in this case. To find no duty owed by Federal would be to

condone the reckless actions of the very party that actually decided not to provide a defense to Fleet or, ultimately, stand by its indemnity obligations.

In this case the duty is even more clear-cut. Federal expressly and in writing assumed the duty to "comply with all applicable laws and regulations, including . . . those related to claim settlement practices. Agreement § 3. The Rhode Island Unfair Claims Settlement Practices Act, RIGL § 27-9.1 *et seq.*, sets forth standards for the investigation and disposition of claims arising under insurance policies issued to Rhode Island residents, *id.* at § 27-9.1-1. These standards, were designed to protect "residents" against "unfair treatment by insurers." *See* R.I. Legis. 93-227. "Insurer" is explicitly defined in § 27-9.1-2(3) to include "any person . . . engaged in the business of insurance, including insurance producers, adjusters, and third party administrators." The statute thus applies unquestionably to Federal, whether it be considered an insurer, an adjuster, or an administrator. Section 27-9.1-4 enumerates certain acts that constitute an unfair claim practice, including acts pled here against Federal:

> (2) Failing to acknowledge and act with reasonable promptness upon pertinent communications with respect to claims arising under its policies;
>
> . . .
>
> (4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;
>
> . . .
>
> (6) Refusing to pay claims without conducting a reasonable investigation;
>
> (7) Failing to affirm or deny coverage within a reasonable time after having completed its investigation related to the claim or claims;
>
> . . .
>
> (12) Failing in the case of claims denials or offers of compromise settlement to promptly provide a reasonable and accurate explanation of the basis of those actions;

§ 27-9.1-4.

Under Rhode Island law, a statutory violation serves as prima facie evidence of liability in a negligence case. *See, e.g., Errico v. LaMountain*, 713 A.2d 791, 794 (1998). Other states -- including California -- have held that violation of the unfair claims practices statute evidences the duty of care owed to the insured. *Nunberger v. Cal. Fed. Ins. Agency, Inc.*, 2002 WL1587922 (Cal. App. 2 Dist. 2002) (unpublished), is precisely on point. In that case, the insured asserted a claim of simple negligence against Cal Fed, the insurance agency that processed and handled claims for the issuer of the policy. The court noted that under California law, as in Rhode Island, the essential elements that must be pled to assert a cause of action for negligence are a legal duty to use care, a breach of that duty, and damages caused by the breach. *Id.* at *3. The court held that the California cognate of § 27-9.1, which makes unlawful certain unfair claims settlement practices, evidenced the duty owed to the insured. *Id.* The court noted that while that statute, like § 27-9.11, did not provide a private cause of action, nonetheless a violation of the statute is "evidence [of] a breach of duty to an insured by an insurer or independent insurance agent under the implied covenant of good faith and/or general principles of negligence." *Id., citing Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 915, 93 Cal. Rptr. 364 (2000) (even though there is no private cause of action, violations of the Unfair Claims Settlement Practices Act "may evidence the insurer's breach of duty to its insured under the implied covenant"); *Eddy v. Sharp*, 199 Cal. App. 3d 858, 866, 245 Cal. Rptr. 211 (858) (Unfair Claims Settlement Practices Act established a duty of "due care" that allows an action in negligence against independent insurance broker).

Thus, even if a statute does not create a private cause of action, it may establish a standard of conduct that is enforceable under pre-existing common law principles. *See, e.g., Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 216, 923 P.2d 456, 461 (1996) (evidence of violation of Unfair Claim Settlement Practices Act, which does not allow a private cause of action, was admissible to show insurance industry standards); *Heyden v. Safeco Title Ins. Co.*, 175 Wis.2d 508, 498 N.W.2d 905 (Ct. App. 1993), *overruled on other grounds*, 197 Wis.2d 365, 541 N.W.2d 753 (1995) (regulations under unfair claims statute admissible on issue of whether

insurance company acted unreasonably). In other words, by spelling out in detail the standard of conduct expected of such administrators, the statute put Federal on notice of what could foreseeably cause harm to Fleet under pre-existing common law tort principles.

## V. Rhode Island Law Permits Fleet's Tortious Interference Claim.[12]

The elements of a tortious interference claim are "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." *Jolicoeur Furniture Co. Inc. v. Baldelli*, 653 A.2d 740, 752 (R.I. 1995) (citing *Smith Development Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). "It is usually said that tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another person if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable." *Jolicoeur*, 653 A.2d at 752 (citing W. Page Keeton, et al, Prosser and Keeton on the Law of Torts, § 129 at 978 (5th ed. 1984)).

Nothing about Federal's status as a claims administrator defeats Fleet's tortious interference claim. Indeed, by the claim's definition, there is no requirement that the alleged wrongdoer be a party to the contract. Under the correct articulation of the law, it is clear that Fleet has established all four factors of such a claim: the existence of an insurance contract is undisputed as is Federal's knowledge of it, and Fleet clearly suffered damages as a result of Federal's conduct. Moreover, Federal's intentional failure to determine whether there was any

---

12 As discussed in Section I, Rhode Island law governs the analysis in this case. The California cases cited by Federal are thus irrelevant and moreover misleading and inaccurate. Those cases hold only that one cannot be held to have interfered with *his own* contractual relations, although one may be held liable for conspiring with a nonparty to interfere with his own contract.

lawful basis to deny Fleet's claim, or more disturbing still, a defense under the policy, satisfies the intentional interference element.[13]

Federal's utter failure to provide *any* defense to Fleet and its denial of Fleet's claim, without conducting any investigation, was egregious conduct, and interfered with an extremely important contractual interest of Fleet; without the benefit of the insurance coverage for which Fleet paid, it was left to pay a large settlement. The interest Federal sought to advance -- apparently, protecting its own coffers -- defies the *Skaling* court's articulation of insurers' duties. *See supra*. Moreover, the balance of social interests clearly tips in Fleet's favor; Federal cannot claim to have an interest in depriving Fleet of any opportunity to obtain coverage under its insurance contract. As a matter of law, Fleet has made out a claim for interference with contractual relations, and Federal's motion to dismiss that claim must be denied.

**CONCLUSION**

Fleet easily meets the standards of pleading an action in negligence and for tortious interference with contractual relations. Moreover, Fleet easily meets the generous standard set forth in *Skaling* for a bad faith settlement claim. Fleet's claims are not barred by Federal's "privity" and "agent of a disclosed principal" defenses, as those principles are not applicable under Rhode Island law. Federal's motion ignores the facts of this case. Federal agreed to and did in fact stand in the shoes of an insurer with respect to Fleet; Federal, in fact, had the power to

---

[13] Rhode Island follows the Restatement in determining whether an act of interference was improper. *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 629 (R.I. 2000). The Restatement factors include, but are not limited to: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the contractual interest with which the conduct interferes; (4) the interests sought to be advanced by the actor; (5) the balance of social interests in protecting freedom of action of the actor and the contractual freedom of the putative plaintiff; (6) the proximity of the actor's conduct to the interference complained of; and (7) the parties' relationship. *Id.* (citing Restatement (Second) Torts § 767, at 26-27 (1979)).

make and did make the very insurance decisions that form the basis of this lawsuit; and, lest it be forgotten, Federal had a direct pecuniary stake in the outcome. On these facts, Rhode Island's strong public policy favoring insureds, settled Rhode Island law, and compelling authority directly on point all demonstrate that Federal's motion must be denied.

Respectfully submitted,

**ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION**

By its attorneys,

Steven E. Snow, R.I. Bar No. 1774
Howard Merten, R.I. Bar No. 3171
**PARTRIDGE SNOW & HAHN LLP**
180 South Main Street
Providence, RI 02903
(401) 861-8200

Of Counsel:

S. Elaine McChesney, BBO #329090
Jennifer W. Corinis, BBO #647247
Lara N. Gelbwasser, BBO # 657376
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO FEDERAL INSURANCE CO.'S MOTION TO DISMISS was mailed, postage prepaid, on this 30th day of January, 2006

Stephen J. Reid, Jr., Esq.
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903

Jonathan A. Constine, Esq.
Douglas S. Crosno, Esq.
HORGAN & HARTSON L.L.P.
555 13th Street, N.W., Suite 800E
Washington,D.C. 20004

Geoffrey J. Vitt, Esq.
Vitt & Rattigan
Eight Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055

Matthew F. Medeiros, Esq.
Little Medeiros Kinder Bulman &
Whitney, P.C.
72 Pine Street
Providence, RI 02903

Shaw L. B[illegible]

Dated: January 30, 2006

838564_1/999998-75