UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERTSON STEPHENS, INC. and BANK OF AMERICA CORPORATION, as the successor to FLEETBOSTON FINANCIAL CORPORATION

Plaintiffs,

v.

FEDERAL INSURANCE CO. and BULFINCH INDEMNITY COMPANY, LTD., as the successor to FFG INSURANCE CO., LTD.,

Defendants.

Case No. 05-360-S-LDA

**REPLY IN SUPPORT OF DEFENDANT FEDERAL INSURANCE COMPANY'S MOTION TO DISMISS**

Defendant Federal Insurance Company submits this reply in support of its motion to dismiss the complaint filed against it by Plaintiffs Robertson Stephens, Inc. ("RSI") and Bank of America Corporation, as successor to FleetBoston Financial Corporation ("Fleet") (collectively, "Plaintiffs").

As pled in the Complaint, the legal obligations among Fleet, FFG and Federal, as laid out in the contracts among those parties, were very clear. FFG (and FFG alone) was Fleet's insurer; it owed an obligation to Fleet (and its subsidiaries, like RSI) alone, to provide coverage, subject of course to the terms, conditions, limitations and exclusions of the policy it issued to Fleet. Federal, in contrast, made a contract with FFG, and FFG alone, to adjust claims for FFG. Thus, <u>under the contracts entered into by the parties</u>, if FFG breached its obligation to provide insurance coverage – whether because of a mistake by Federal in the adjustment of the claim, or for some other reason – Fleet's remedy was against FFG. If Federal failed to properly perform its adjustment services to FFG, FFG's remedy was against Federal.

In asserting claims against Federal, Plaintiffs are asking the Court, in effect, to rewrite that very same negotiated arrangement by which Fleet, FFG and Federal agreed to be bound. Because Plaintiffs do not like the idea that the insurance contract they made with FFG limits their remedy to claims against their subsidiary, they are asking this Court to judicially create a new insurance relationship by imposing obligations on Federal, which never issued an insurance contract to Fleet.

Such a request would seem worthy of rejection on its face, but it is even more so considering that (1) the majority of jurisdictions have rejected the notion that an adjuster (like Federal) can be held liable to the insured in tort for acts performed on behalf of an insurer; (2) California law, which likely applies here, is the leading court following the majority rule; and (3) even if Rhode Island law applies, Rhode Island has adopted a statute that precludes a suit against an adjuster, and the Supreme Court has specifically rejected the notion of suing an insurer's agent for conduct performed in the course of that agency. Rhode Island courts have never held that an insured can sue an adjustment company hired by the insurer, with whom the insured has no contractual relationship, for errors in adjusting the claim. As a federal court in a diversity case, this Court should decline Plaintiffs' invitation to adopt that widely-rejected view in this jurisdiction.

## I. PLAINTIFFS' OPPOSITION IS BASED UPON IRRELEVANT AND DEMONSTRABLY UNTRUE ASSERTIONS

Plaintiffs begin their brief by making a number of assertions that are simply untrue but ultimately irrelevant. Plaintiffs assert, for example, that Federal somehow "concedes the facts set forth in the Complaint and acknowledges that it committed acts that constitute bad faith settlement practices." Id. at 1. Federal has "conced[ed]" or "acknowledge[d]" nothing of the sort. In a motion to dismiss, the allegations of the Complaint are accepted as true for the purposes of the motion. See Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). But legal conclusions like "bad faith" are not accepted on a dismissal motion. E.g., New England Cleaning Serv., Inc. v. American Arb. Assoc., 199 F.3d 542, 545 (1st Cir. 1999); DeJesus v.

Sears, Roebuck & Co., 97 F.3d 65, 70 (2nd Cir. 1996). To assert that Federal has "concede[d]" any allegations is absurd and misleading.

Equally incorrect (and also irrelevant) is Plaintiffs' contention that Federal caused FFG to breach its duty to defend, which Plaintiffs repeat throughout their brief. On the face of the Complaint, that assertion is demonstrably untrue. There was no breach of the duty to defend in this matter because coverage did not attach (if at all) until the RSI Employment Claims were settled. Item 7 of the Policy Declarations provides that "no coverage shall attach from this policy until [Fleet] has incurred a **Retention** amount per loss or claim as scheduled below. . . . **Retention** Amount: $10,000,000." See Policy, Declarations Page (emphasis added). Plaintiffs did not incur more than $10,000,000 in alleged loss until the RSI Employment Claims were resolved. See Complaint at ¶¶ 42-44. Therefore, no duty to defend arose – in the words of the Policy, "no coverage . . . attach[ed]" – until the case was already concluded. The notion that Federal was somehow unreasonably late in responding to this claim is thus untrue, and the contention that FFG somehow breached the duty to defend – when that duty was never even triggered in the first place – is utterly baseless. Of course, the question on this motion to dismiss is not whether such a duty was breached, but from whom Plaintiffs may seek a remedy.

Also unavailing is Plaintiffs' repeated assertion that there was a "complete delegation of all insurer duties to Federal and acceptance thereof by Federal." Plf. Br. at 4; see also id. at 5-6, 19-20. That is a demonstrably false characterization of the Claim Administration Agreement, which the Court can read for itself. Federal agreed only to provide "claim administration services" for FFG. See Claim Administration Agreement § 1 (attached as Exhibit D to Complaint). FFG maintained at all times the obligation to pay claims under the Policy, for which it was "solely liable." Id. § 6(3). Moreover, even those claim-adjustment duties are at all times limited by the phrase "only with the express written permission of [FFG]." Id. §2(A). To suggest that Federal had unfettered control over the claims made to FFG is thus incorrect.

In any event, whether Federal did or did not have complete control over claims handling, and whether as a result FFG breached its duty to defend is beside the point for this

motion. Even if those assertions had a basis in the allegations of the Complaint (they do not), they would not change the fact that (according to the Complaint allegations) (1) Federal was not a party to the insurance contract, and (2) Federal was acting as FFG's agent at all times. Under the prevailing law, therefore, Federal cannot be liable to Plaintiffs.

## II. CALIFORNIA LAW REQUIRES THAT THE CLAIMS AGAINST FEDERAL BE DISMISSED

If the Court applies California law, there is no question that Plaintiffs' Complaint against Federal must be dismissed. Not only have California courts rejected the notion that an insured is a third party beneficiary of the claims adjustment agreements (e.g., Thompson v. Cannon, 274 Cal. Rptr. 608, 610 (Cal. App. 1990)), but the three specific causes of action that Plaintiffs have actually asserted against Federal in this case – bad faith, negligence and tortious interference – have all been expressly rejected by the California courts, beginning with the landmark ruling by the state Supreme Court in Gruenberg v. Aetna Ins. Co., 510 P.2d 1032, 1039 (Cal. 1973) ("[o]bviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing" and "corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract")); see also Cobarrubias v. Allstate Ins. Co., 1998 WL 656571, *1 (C.D. Cal. July 10, 1998) ("as a matter of law, plaintiff cannot state causes of action against" defendant insurance adjusters for bad faith or negligence); Henry v. Associated Indemnity Corp., 266 Cal. Rptr. 578 (Cal. App. 1990); Sanchez v. Lindsey Morden Claims Services, Inc., 84 Cal. Rptr. 2d 799 (Cal. App. 1999); Thompson, 224 Cal. Rptr at 611; Stone v. New England Ins. Co., 39 Cal. Rptr. 2d 714, 730-31 (Cal. App. 1995) (unpublished). 1/

1/ Remarkably, Plaintiffs cite Delos v. Farmers Group, Inc., 155 Cal. Rptr. 843 (Cal. App. 1979), as somehow deviating from this position. Plaintiffs fail to mention that Delos was abrogated by a subsequent decision of the California Supreme Court, and is at most limited to the situation where there is no other entity "from which respondent can obtain redress." Filippo Industries, Inc. v. Sun Ins. Co. of New York, 88 Cal. Rptr. 2d 881, 889-80 (Cal. App. 1999).

[Footnote continued]

Plaintiffs themselves, in their Complaint, supply the most important fact indicating that California law applies: the allegation that RSI had its "principal place of business in San Francisco, CA." Complaint ¶ 3. RSI's location in California makes California the place of the injury and renders California law applicable. See Taylor v. Mass Flora Realty, Inc., 840 A.2d 1126, 1128 (R.I. 2004). Plaintiffs assert that at the time of the insurance claim, RSI was no longer located in California (Pl. Br. at 3); however, that allegation is missing from the Complaint.

If the Court applies the law of the state with the "most significant relationship" to this particular insurance claim – California – it is clear that the Complaint fails to state a cause of action against Federal for which relief may be granted. But the Court need not decide that issue, because whether California or Rhode Island law would apply, Federal cannot be held liable.

## III. UNDER RHODE ISLAND LAW, THE CLAIMS AGAINST FEDERAL MUST BE DISMISSED

Like California, Rhode Island recognizes the well-settled rule "that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority." Cardente v. Maggiacomo Ins. Agency, Inc., 272 A.2d 155, 156 (R.I. 1971). Each of the counts asserted against Federal runs afoul of this basic, black-letter principle of agency law.

### A. There is No Basis for Any Bad Faith Claim Against Federal

Plaintiffs devote several pages of their brief to Rhode Island's Unfair Claims Settlement Practices Act, RIGL § 27-9.1-1 et seq., and Rhode Island's "bad faith" statute, § 9-1-33. But Plaintiffs have no grounds for any claim against Federal under either statute, or under common law.

---

[Footnote continued]

Here, Plaintiffs can obtain redress (to the extent any is due) from their insurer, Bulfinch (FFG's successor), whom they have named in this lawsuit.

Plaintiff's reliance on RIGL § 27-9.1-1 is misplaced. As Plaintiffs' concede, that statute specifically states that "[n]othing in this chapter shall be construed to create or imply a private cause of action for violation of this chapter." RIGL § 27-9.1-1; see also Solomon v. Progressive Cas. Ins. Co., 685 A.2d 1073, 1075 (R.I. 1996) (no private cause of action under RIGL § 27-9.1-1). Thus, Plaintiffs' extended discussion of RIGL § 27-9.1-1 is beside the point.

Plaintiffs' citation of § 9-1-33 is similarly unavailing. That statute provides that "an insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing the policy when it is alleged the insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy. . ." R.I. Gen. Laws § 9-1-33 (emphasis added). Plaintiffs expend considerable effort attempting to establish that Federal is an "insurer" within the meaning of the statute. However, those efforts are in vain. The Rhode Island Supreme Court has held that the state legislature intended the terms "insured" and "insurer" in § 9-1-33 to have their "technical insurance-contract meaning." Cianci v. Nationwide Ins. Co., 659 A.2d 662, 666 (R.I. 1995) (employee did not have cause of action against workers compensation carrier under § 9-1-33 because employee was not party to insurance contract and therefore was not an "insured" within the meaning of the statute); see also LeFranc v. Amica Mut. Ins. Co., 594 A.2d 382, 384-85 (R.I. 1991) (§ 9-1-33 inapplicable to claims manager, because statute applies only to "insurers" and not their agents). Here, Federal is not Plaintiffs' "insurer" within the "technical insurance-contract meaning" of that term because there is no contractual relationship – i.e., no "insurance-contract" – between Federal and Fleet or RSI. Because an insurance relationship is fundamentally one of contract, Federal cannot be deemed an "insurer" of Plaintiffs in any sense.

Moreover, § 9-1-33 specifically limits claims to actions brought by "an insured under any insurance policy . . . against the insurer issuing the policy." Hence, even if Federal could be deemed "an" insurer, it obviously is not "the insurer" that "issue[d] the policy." That is FFG (or Bulfinch, FFG's corporate successor), not Federal.

Plaintiffs argue that they nevertheless "may still proceed against Federal under the common law tort" of bad faith. Plf. Br. at 13. The Complaint, however, fails to assert a "common law tort" bad faith claim against Federal, nor could it. Section 9-1-33 supersedes any common-law bad faith claim. See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 378 (1st Cir. 1991) ("[I]t is clear that Rhode Island's enactment of a statutory cause of action for insurer bad faith codified, and thus supplanted, the common law action.") (citing Pace v. Ins. Co. of North America, 838 F.2d 572, 578 (1st Cir. 1988); Rumford Prop and Liab. Ins. Co. v. Carbone, 590 A.2d 398, 400 (R.I. 1991)). Because § 9-1-33 does not permit a bad faith cause of action against Federal, Plaintiff has no basis for asserting a bad faith claim under "common law."

In any case, the common law tort of bad faith is based upon the contractual relationship between the insurer and its policyholder. Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980) (concluding that "an insurer doing business in Rhode Island is obligated to act in good faith in its relationship with its policyholders."). No such relationship exists between Federal and Plaintiffs.

In initially adopting a cause of action for bad faith, the Rhode Island Supreme Court relied heavily upon the holdings of the California Supreme Court, including the ruling in Gruenberg. See Bibeault, 417 A.2d at 318 (citing and relying upon numerous California cases). The California Supreme Court has squarely held that an insured may not pursue bad faith claims against claims adjusters or other insurance company agents that are not parties to the insurance contract. There is no reason to believe the Rhode Island Supreme Court would have adopted Gruenberg's bad faith cause of action without also adopting the limitations on the cause of action contained in that same case. For that reason, and the others discussed above, the "bad faith" claim against Federal fails as a matter of law.

**B. Plaintiffs' Negligence Claim Fails As a Matter of Law**

Plaintiffs also contend that general principles of Rhode Island negligence law establish a viable claim against Federal for negligence. See Plf. Br. at 13-18. Plaintiffs' analysis

of such generic tort law principles is as irrelevant and unavailing as its extensive discussion of Rhode Island's bad faith and unfair claims handling statutes.

As with its bad faith argument, Plaintiffs' argument runs head-on into a settled principle of Rhode Island law: "[I]t has long been settled in Rhode Island that 'an agent acting on behalf of a disclosed principal is not personally liable to third parties for acts performed within the scope of the agent's authority.'" UST Corp. v. General Road Trucking Corp., 783 A.2d 931, 938-39 (R.I. 2001) (emphasis added) (citation omitted). Because there is no dispute that Federal was acting as FFG's agent "at all relevant times," Complaint ¶ 25, the negligence count fails to state a claim for which relief may be granted, and so must be dismissed.

As explained at length in Federal's opening brief, this principle has been specifically applied by the Rhode Island Supreme Court in the context of agents of insurance companies. In Cardente v. Maggiacomo Ins. Agency, Inc., 272 A.2d 155 (R.I. 1971), the Court rejected an insured's claim against an insurance agent who failed to make requested changes to the insured's policy because "an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority." Id. at 156. As the Cardente court held, "[t]his principle applies to dealings between insurance agents and insureds." Id. (emphasis added). It is hard to imagine a stronger rejection of the negligence theory that Plaintiffs seek to advance against Federal in this case.

Yet Plaintiffs do not even mention Cardente, much less seek to address it. Instead, they rely heavily upon the case of Forte Bros., Inc. v. Nat'l Amusements, Inc., 525 A.2d 1301 (R.I. 1987), a case that, upon examination, does not help Plaintiffs in the slightest.

In Forte, a general contractor brought an action against a project owner and the supervising architect/site engineer. The general contractor had contracted with the project owner to receive $15 per cubic yard for the removal of mass rock and boulders. Id. at 1302. In a separate contract, project owner hired the supervising architect to measure this removal. Id. The plaintiff general contractor asserted a claim against the supervising architect, claiming that

the architect had failed to properly measure and report the volume of materials removed, which thereby adversely impacted the plaintiff's compensation. Id.

Because the contractor's pay was directly tied to the performance of the architect's duties, the Forte court concluded that the contractor should be allowed to pursue a negligence claim against the architect for policy reasons, noting that contractors "share an economic relationship and community of interest with the architect on a construction project." Id. at 1303. The court concluded that to deny a negligence claim in such circumstances would be "[t]o deny this plaintiffs its day in court." Id.

Forte has no applicability here. The relationships between an architect, a general contractor, and a project owner are different from an insurance company, an insurer, and an adjuster. Nothing in Forte remotely suggests it was intended to apply to the latter situation. In fact, subsequent holdings of the Rhode Island Supreme Court have not extended Forte to other relationships. See, e.g., Kennett v. Marquis, 798 A.2d 416, 419 (R.I. 2002) (buyer could not assert negligence claim against real estate agent for acts on behalf of seller); Lutz Engineering Co., Inc. v. Industrial Louvers, Inc., 585 A.2d 631, 635 (R.I. 1991) (heating and ventilation subcontractor could not assert negligence claim against architect-engineer for negligence in reviewing drawings); Anderson v. Garafalo and Associates, Inc., 2003 WL 23195552 (R.I. Super. Nov. 14, 2003) (engineering services).

Moreover, in this case (unlike Forte) Plaintiffs would not be "den[ied] [their] day in court" if they could not sue Federal. Plaintiffs can assert, and have asserted, claims for coverage and for bad faith claims against Federal's "principal," FFG (and/or FFG's successor, Bulfinch), based on the insurance contract at issue. Clearly, Bulfinch will be liable for any alleged acts of negligence committed by its "agent" Federal in connection with the claim. See, e.g., Cardente., 272 A.2d at 156. Thus, unlike in Forte, here there is no risk that Plaintiffs will be "denied [their] day in court."

The Forte court also recognized that its holding was limited to the unique and particularized relationship between supervising architects and contractors. In fact, the Forte

court justified its holding in part on the ground that it was joining "'an emerging majority of jurisdictions which have taken the position that a contractor can maintain a negligence action against an architect without direct privity of contract between the parties.'" Forte, 525 A.2d at 1303 (citing Detweiler Bros., Inc. v. John Graham & Co., 412 F.Supp. 416, 419 (E.D.Wash. 1976)). By contrast, in this case the "emerging majority of jurisdictions" have specifically rejected the causes of action asserted against Federal here, as a vast majority of courts have concluded that insureds may not assert claims against insurance adjusters and claims administrators. See Federal Opening Br. at 12 (citing cases). Thus, the relevant "majority rule" in this case would require that the Complaint against Federal be dismissed.

Further, the proposition for which Plaintiffs cite the Forte case – that "a person who acts as an acknowledged agent for a disclosed principal is independently liable for his own acts of negligence" – is found in a concurring opinion that was only joined by one justice of the Rhode Island Supreme Court, Justice Kelleher. See 525 A.2d at 1304. In reaching that conclusion, Justice Kelleher cited no Rhode Island law, and instead relied upon a decision from the Southern District of Florida. Id. (citing Inter-Ocean (Free Zone), Inc. v. Manaure Lines, Inc., 615 F.Supp. 710 (S.D.Fla. 1985)). Moreover, this concurring opinion also noted that subjecting an agent to liability in such circumstances was "at odds" with at least two other Rhode Island Supreme Court opinions holding that an agent is not liable for negligent acts committed in the service of a disclosed principal. Id. Significantly, one of those cases was Cardente, the case involving an insurance agent discussed above and in Federal's opening brief.

The fact is that the Rhode Island Supreme Court has consistently held, subject only to the exception in Forte, that an agent for a disclosed principal is not liable in negligence. That principle, especially as applied to agents for an insurance company in Cardente, requires that Plaintiffs' Complaint against Federal be dismissed.

### C. The Count for Tortious Interference with Contract Should Also Be Dismissed

For similar reasons, the remaining count asserted against Federal – for tortious interference with contract – must also be dismissed under Rhode Island law. Once again, there is no question that "at all relevant times" Federal was an agent acting on behalf of the disclosed principal, FFG, nor can there be any question that Rhode Island law prohibits tort claims against agents in such circumstances. See Cardente, 272 A.2d at 156.

In fact, a tortious interference claim is a factual and legal impossibility in this context. "By definition, tortious interference necessarily involves three parties," as the claim is based upon misconduct committed by a non-party to the agreement. Griffin v. Schneider, 995 F.2d 1061, 1993 WL 220403, *1 (1st Cir. 1993) (citing American Trade Partners, LP v. A-1 Enterps., 757 F.Supp. 545, 555 (E.D.Pa. 1991)); see also URI Cogeneration Partners, L.P. v. Board of Governors for Higher Education, 915 F.Supp. 1267, 1289 (D.R.I.. 1996) (same rule under Rhode Island law).

However, when an agent is acting within the scope of its agency, the agent and principal "are considered the same entity." Griffin, 1993 WL 220403 at * 1. 2/ For that reason, tortious interference claims against agents must fail, because an agent cannot tortiously interfere with the contracts to which its principal is a party, since the agent and principal are deemed to be one and the same. Id.; see also Michelson v. Exxon Research & Eng. Co., 808 F.2d 1005, 1007-08 (3d Cir. 1987) (corporate officer acting in his official capacity could not tortiously interfere with a corporate contract); Rao v. Rao, 718 F.2d 219, 225 (7th Cir. 1983) (agent of corporation is not considered to be a separate entity capable of inducing the corporation to breach its contracts); Gruenberg, 510 P.2d at 1039 ("corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract"); Richardson v. Zurich Ins. Co., Inc., 27 S.W.3d 39, 42 (Tex. App. 2000) (affirming dismissal of

2/ While Griffin involved Maine law, the Court relied on general principles of tortious interference law taken from numerous authorities around the country.

tortious interference claim asserted against claims adjuster because plaintiff conceded in its complaint that the adjuster was the insurer's "duly authorized agent"; court concluded that "[t]his claim is groundless, however, as the law is well settled that an agent cannot tortiously interfere with the contract of its principal").

Plaintiffs claim that "[n]othing about Federal's status as a claims administrator defeats Fleet's tortious interference claim." Plf. Br. at 18. Once again, Plaintiffs overlook basic rules of agency law. Indeed, it is precisely because of Federal's status as FFG's claims administrator – and Federal's undisputed status as an agent acting within the scope of its agency – that "Fleet's tortious interference claim" is "defeat[ed]."

In that regard, the First Circuit's decision in Griffin is particularly instructive. In Griffin, the plaintiff sued Herbert Schneider, CEO of Instuiform of New England, Inc. ("Instuiform"), for tortious interference, alleging that he had caused Instuiform to underpay their wages in breach their contracts of employment. 1993 WL 220403, *1. The First Circuit rejected that claim on the ground that as an officer of the company, Scheider could not interfere with the company's contracts because "his acts, in law, are acts of the corporation." Id. The Court explained:

> [H]ere, the very thesis of plaintiffs'claim is that Schneider, *by virtue of his controlling position in Insituform,* caused Insituform to underpay their wages. This is merely another way of saying that plaintiffs' claim is premised on Schneider's actions in an official capacity. Ergo, the lower court appropriately dismissed the tortious interference count.

Id. (emphasis in original).

Precisely the same reasoning applies here. Plaintiffs allege that Federal, "by virtue of [its] controlling position" pursuant to the Claim Administration Agreement, caused FFG to deny coverage, which (purportedly) breached the insurance contract issued by FFG to Fleet. As in Griffin, Federal is being sued for acts taken as FFG's agent in administering the very contract it was hired to administer. "[Its] acts, in law, are acts of [FFG]." Cf. id. While Federal's conduct in administering that contract (if proved to be wrongful) affords a basis for a

claim against FFG, under Griffin (and the other law cited above) it does not constitute "tortious interference."

The Court should therefore grant Federal's motion to dismiss.

**D. The Majority Rule Supports Dismissal of the Claims Against Federal**

Clearly, the weight of Rhode Island authority dictates that Plaintiffs' Complaint be dismissed. If authority from other jurisdictions is considered, it becomes even clearer that Federal's motion to dismiss should be granted.

Plaintiffs cite case law from a handful of jurisdictions that have upheld common law tort claims against claims administrators. See Plf. Br. at pp. 6-10. However, by Plaintiff's own admission, those courts represent the "minority view." Id. at n. 5. As Federal made clear in its opening brief, the vast majority of jurisdictions that have considered this question have concluded that claims adjusters (like Federal) cannot be liable (in tort or in contract) to the insureds making the claim. See Charleston Dry Cleaners & Laundry, Inc. v. Zurich American Ins. Co., 586 S.E.2d 586, 588-89 (S.C. 2003) (surveying case law); see also Malone v. Cook, 2005 WL 2758091 (W.D. Ky. Oct. 25, 2005); Wolverton v. Bullock, 35 F.Supp.2d 1278 (D. Kan.1998); M & M Towing Co., Inc. v. United Capitol Ins. Co., 1998 WL 169694 (E.D. La. 1998); Meineke v. GAB Business Servs., Inc., 991 P.2d 267 (Ariz. Ct. App. 1999); Sanchez v. Lindsey Morden Claims Servs., Inc., 84 Cal. Rptr. 2d 799 (Cal. App. 1999); Dear v. Scottsdale Ins. Co., 947 S.W.2d 908 (Tex. App. 1997); King v. National Security Fire and Cas. Co., 656 So.2d 1338 (Fla. Dist. Ct. App.1995); Troxell v. American States Ins. Co., 596 N.E.2d 921, 925 n. 1 (Ind.Ct.App.1992); Velastequi v. Exchange Ins. Co., 505 N.Y.S.2d 779 (N.Y.City Civ.Ct.1986). In fact, since Federal submitted its opening brief, this "majority rule" was adopted by the Vermont Supreme Court. See Hamill v. Pawtucket Mut. Ins. Co., --- A.2d ---, 2005 WL 3556694 (Vt. 2005).

Where, as here, a court is attempting to make an "Erie prediction" with respect to how a state supreme court might rule, the First Circuit has been "unwilling to hold that Rhode Island law is contrary to the majority rule." Almonte v. National Union Fire Ins. Co., 705 F.2d

566, 569 (1st Cir. 1986) (emphasis added). Similarly, this Court should reject Fleet's invitation to ignore the clear majority rule, and should instead dismiss Plaintiffs' Complaint.

Plaintiffs attempt to distinguish this substantial body of case law by arguing that these cases only involved what it calls "garden-variety claims adjusters," whereas here Federal supposedly had "primary control over and ultimate decision making in the claims settlement process." See Pl. Br. at 6 & n. 5. 3/ But that argument, again, does not withstand scrutiny. The "majority rule" cases cited above generally involved large, national, independent companies that were hired for the purpose of adjusting claims. E.g., Charleston Dry Cleaners, 586 S.E.2d at 587 ("national insurance adjusting company that provides adjusting, investigation, claims administration, and information management services to the property/casualty insurance industry"). As a division of Federal Insurance Company, Chubb & Son performs precisely that same function. It is no more or less a "garden variety claims adjuster" as the adjusters in the "majority rule" cases – and those cases are indistinguishable on that basis.

The rationale behind the "majority rule" cases is at the same time simple and compelling. It rests on the simple fact that the insured's contract is with the insurer, not the insurer's third-party adjuster. Therefore, the insured should look to the insurer, not another party, for a remedy resulting from the improper denial of coverage. As explained recently by the Vermont Supreme Court in the Hamill case:

> The relationship between the insured and the insurer is defined and governed by the insurance policy and its accompanying implied covenant of good faith and fair dealing. Further, the obligations of an independent adjuster are measured by the contract between the adjuster and the insurer. Because the conduct of an adjuster acting within the scope of his or her authority as agent for the insurer is imputed to the insurer, the insurer is subject to liability for the adjuster's mishandling of claims in actions alleging breach of contract or bad faith. Hence, allowing the insured

3/ It is not clear what, in Plaintiffs' view, constitutes a "garden-variety claims adjusters," as opposed to a "non-garden-variety" type.

> to sue the independent adjuster in tort for economic losses allegedly caused by mishandled claims is both unnecessary and contrary to the law of agency.

2005 WL 3556694, ¶ 13 (emphasis added) (citations omitted).

In addition to the logic of the rationale set forth in Hamill – which is based on the contractual relationship between the insurer and insured – there is the secondary rationale, based on the relationship between the insurer and the adjuster. The insurer hires the adjuster to act on behalf of the insurer. However, "[i]mposing a duty [of care] would subject the adjuster to conflicting loyalties. . . . . An adjuster cannot argue both sides of such disputes, any more than a lawyer can represent opposite sides in a lawsuit." Sanchez, 84 Cal. Rptr. 2d at 802.

Similarly, allowing Plaintiffs to sue Federal for economic losses allegedly caused by mishandled claims would be "both unnecessary and contrary to the law of agency." Hamill, 2005 WL 3556694, ¶ 13. Because any purported misconduct by Federal would be imputed to FFG, Plaintiffs' remedy is against FFG's corporate successor Bullfinch, not Federal. And Plaintiffs have, in fact, pursued that remedy in this very action. At the same time, FFG's contract was with Federal; if FFG (or its successor, Bulfinch) believes that Federal mishandled the claim, FFG (not Plaintiffs) may enforce those rights against Federal.

Fleet made its contract with FFG. It cannot be heard to complain now that liability should be shifted to Federal. Nor should Plaintiffs be permitted to use the forum of a federal court applying state law to manufacture a cause of action that does not exist under Rhode Island law, and which appears directly contrary to it (and to the law of other jurisdictions). Rather, the Complaint against Federal must be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendant Federal Insurance Company respectfully requests that the motion to dismiss be granted.

Dated: February 16, 2006

Respectfully submitted,

Stephen J. Reid, Jr., Bar Id. No. 2811
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, R.I. 02903
Tel: (401) 831-8900
Fax: (401) 751-7542

Of Counsel:

Jonathan A. Constine
Douglas S. Crosno
HOGAN & HARTSON L.L.P.
555 13th Street, N.W., Suite 800E
Washington, D.C. 20004
Tel: (202) 637-5870
Fax: (202) 637-5910

Attorneys for Defendant
Federal Insurance Company

## CERTIFICATION OF SERVICE

I hereby certify that on the 16th day of February, 2006, I caused a copy of the foregoing Reply In Support Of Defendant Federal Insurance Company's Motion To Dismiss to be mailed to:

Steven E. Snow, Esq.
Howard A. Merten, Esq.
Partridge, Snow & Han, LLP
180 South Main Street
Providence, RI 02903

S. Elaine McChesney, Esq.
Jennifer W. Corinis, Esq.
Lara N. Gelbwasser, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Matthew F. Medeiros, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, PC
72 Pine Street
Providence, RI 02903

Geoffrey J. Vitt, Esq.
Vitt & Rattingan, PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055-1229

Jonathan A. Constine, Esq.
Douglas S. Crosno, Esq.
Hogan Hartson, LLP
555 13th Street, N.W.
Washington, DC 20004